Andrew Sullivan and Edward Sullivan, Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department and Pacific Indemnity Company, Respondents.

Argued October 2, 1979, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS, BLATT, DISALLE and MACPHAIL. Judges MENCER and CRAIG did not participate.

*John J. O'Brien, Jr.*, with him *John F. McDevitt, Jr.*, and *O'Brien and O'Brien*, for petitioners.

*Lawrence T. Hoyle, Jr.*, with him *Wilbur L. Kipnes*, and, of counsel, *Schnader, Harrison, Segal & Lewis*, for respondent, Pacific Indemnity Company.

*Paul A. Adams*, Assistant Attorney General, with him *Kathleen Walsh Cramer*, Assistant Attorney General, *Norman J. Watkins*, Chief of Civil Litigation, and *Edward G. Biester, Jr.*, Attorney General, for respondents, Commonwealth of Pennsylvania Insurance Department and Insurance Commissioner.

OPINION BY JUDGE BLATT, December 13, 1979:

Andrew and Edward Sullivan (petitioners) appeal here from an order of the Insurance Commissioner (Commissioner) which dismissed their complaint against the Pacific Indemnity Company (Pacific).

The petitioners are associated obstetricians and gynecologists licensed to practice medicine in Pennsylvania, and in 1975, while they held a medical malpractice policy issued by Pacific, the Insurance Service[1] filed a proposal to increase medical malpractice rates by approximately 250 percent. This rate filing

---

[1] Pacific subscribed to the medical malpractice rates filed by the Insurance Service Office.

was disapproved by the Commissioner in 1976 after a formal hearing on the request. In the meantime, Pacific had instituted the use of the "consent-to-rate" procedure permitted by Section 4(g) of the Casualty and Surety Rate Regulatory Act (Act),[2] 40 P.S. §1184 (g), which provides:

> Upon the written consent of the insured stating his reasons therefor, filed with and approved by the Commissioner, a rate in excess of that provided by a filing otherwise applicable may be used on any specific risk. The rate shall become effective when such consent is filed and shall be deemed to meet the requirements of this Act until such time as the Commissioner reviews the filing and so long thereafter as the filing remains in effect.

Consequently, the petitioners, and all other obstetricians and gynecologists who held policies with Pacific, received a consent-to-rate form which proposed to increase their premium well above the rates then approved, but below the filing rejected, by the Insurance Department. Although malpractice insurance was available from other sources, it could not be obtained at rates equivalent to or lower than Pacific's; therefore, the petitioners signed the form. When the Department learned of Pacific's widespread use of the consent-to-rate form, however, it informed Pacific that it did not approve of the use of consent-to-rate forms on a mass basis because such a practice circumvented the normal rate-approval procedure. But, after a meeting between officials of the Department and Pacific, at which Pacific indicated its intention to withdraw from the malpractice market unless it obtained a rate increase, the Department acquiesced in Pacific's use of these forms.

---

[2] Act of June 11, 1947, P.L 538, *as amended,* 40 P.S. §1181 et seq.

The petitioners then filed a complaint with the Department, challenging Pacific's use of the forms and asserting class-action status on behalf of all obstetricians and gynecologists similarly situated. The Commissioner rejected the petitioners' assertion of class standing and, finding no violation of the Act, dismissed their complaint. The petitioners now appeal to us, arguing (1) that they are entitled to assert class standing and (2) that Pacific's use of the consent-to-rate forms violates the Act and due process.

The Commissioner rejected the petitioners' assertion of class status because, he argues, class actions are unnecessary in the administrative setting and unauthorized by the applicable law. We agree. In the first place, the General Rules of Administrative Practice and Procedure[3] deal with the problem of similarly situated parties by providing for the intervention of interested parties in on-going proceedings and for the consolidation of proceedings which raise similar issues; and no evidence indicates that these mechanisms are inadequate. In the second place, the proper use of a class action is a complex and controversial policy issue, *see* 5 Goodrich-Amram 2d §1710:1 (Supp. 1979), and we do not think the right to assert class standing in an administrative proceeding should be inferred in the absence of a statute or rule specifically conferring and defining such a right.

We also agree with the Commissioner that Pacific's use of the consent-to-rate forms did not, under the circumstances, violate the Act. Pacific began to use the form after it made a business judgment that it would have to increase its rates or withdraw from the market in Pennsylvania. The market was, as the Commissioner noted, "severely contracted", and the

_____
[3] 1 Pa. Code §31.1 et seq. The Insurance Department has specifically adopted these rules. *See* 31 Pa. Code §56.1.

withdrawal of Pacific would have had adverse consequences. Moreover, the rates proposed by Pacific were lower than those otherwise available. Therefore, although the Department's position was that the consent-to-rate form is designed for use on an individual basis, the Commissioner concluded that " 'to enable authorized insurers to meet all requirements of the insuring public of this Commonwealth' ",[4] he would have to approve the forms. Inasmuch as the Act provides for the consent-to-rate procedure, but does not clearly delineate the circumstances under which it may be used, we believe that its proper use is a matter committed to the sound discretion of the Commissioner, and we perceive no abuse of that discretion here.

Nor do we believe that the consent-to-rate procedure violated the petitioners' due process rights,[5] for the procedure here is clearly distinguishable from that found invalid in *Pennsylvania Coal Mining Association v. Insurance Department,* 471 Pa. 437, 370 A.2d 685 (1977). In that case our Supreme Court found a procedure to be constitutionally defective by which industry-wide black lung insurance rates were "deemed" effective after the failure of the Commissioner either to approve or disapprove them within 30 days of their filing. The Court concluded that, under the circumstances, due process required at least some form of notice to the affected insureds and an opportunity for them to object before the rates became effective. We see no basis, however, for the application of that holding to the present case wherein the petitioners voluntarily contracted with Pacific to allow

---

[4] Section 1 of the Act, 40 P.S. §1181.

[5] Pacific asserts that the petitioners did not properly raise this issue before the Commissioner. We note, however, that the Commissioner did address it and so shall we.

an increase in their premiums in order that they would not have to pay the even higher rates for malpractice insurance available from other sources. By definition, the petitioners had notice of the rate proposed in the consent-to-rate form and had an opportunity to reject it, and they were not required to pay rates set without notice and an opportunity to be heard. We must find, therefore, that they were not deprived of due process.

The order of the Insurance Commissioner is affirmed.

ORDER

AND Now, this 13th day of December, 1979, the order of the Insurance Commissioner in the above-captioned matter is hereby affirmed.