William H. BRENDLEY, Jr., PH.D., on behalf of himself and all other similarly situated persons, Petitioner

v.

PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY, Pennsylvania Bureau of Workers' Compensation, Pennsylvania Workers' Compensation Appeal Board and Rohm and Haas Company, Respondents.

Commonwealth Court of Pennsylvania.

Argued March 5, 2007.
Decided June 26, 2007.

Aaron J. Freiwald, Philadelphia, for petitioner.

Carl A. Ammerman, Asst. Counsel, Harrisburg, for respondent, Department of Labor and Industry.

Eric G. Preputnick, Asst. Counsel, Harrisburg, for respondent, Bureau of Workers' Compensation.

Stephen A. Fogdall, Philadelphia, for respondent, Rohm and Haas Company.

BEFORE: LEADBETTER, President Judge, SIMPSON, Judge, McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

Before this Court in its original jurisdiction are the preliminary objections of the

Department of Labor and Industry, Bureau of Workers' Compensation (Bureau), Rohm and Haas Company (Employer), and the Workers' Compensation Appeal Board (Board) to a petition for review in the nature of a complaint seeking declaratory relief (Petition) filed by William H. Brendley, Jr., Ph.D., on behalf of himself and all other similarly situated former and current employees of Employer's Spring House Research and Development Facility. Brendley seeks a declaration as to whether the Workers' Compensation Act (Act)[1] provides compensation for uninjured claimants seeking "medical monitoring," and whether the Act provides a mechanism for a class action claim petition for a large group of claimants seeking such relief. For the reasons that follow, we sustain the preliminary objections to lack of subject matter jurisdiction and dismiss the Petition.

## I. Background

### A. Class Action in Court of Common Pleas

The complicated procedural background of this controversy requires explanation, which we derive from the submissions to this Court. In August 2005, Brendley filed a class action suit in the Court of Common Pleas of Philadelphia County (court of common pleas) on behalf of himself and all former or current employees of Employer's research and development facility in Spring House, Pennsylvania (Spring House Technical Center). The claim, for medical monitoring, sought costs associated with diagnostic testing to aid in the early detection of gliobastoma, a dangerous and deadly form of brain cancer as well as other brain cancers. Brendley

based the suit on Employer's admissions and other evidence regarding an increased incidence of brain cancers among employees of the Spring House Technical Center.

Employer filed a preliminary objection in the nature of a demurrer, asserting Brendley's civil suit was barred by the exclusivity provision of the Act. *See* Section 303 of the Act, 77 P.S. § 481. The court of common pleas sustained Employer's preliminary objection and dismissed Brendley's complaint. The court of common pleas advised Brendley to file his claim with the Bureau.[2]

Brendley filed a motion for reconsideration seeking to vacate the court of common pleas' order dismissing the complaint and to place the civil action on "deferred status," pending the outcome of his workers' compensation claim. The court of common pleas granted this motion.

### B. "Class Action Claim Petition" with the Bureau

In April 2006, Brendley attempted to file a claim petition with the Bureau seeking medical monitoring on his behalf and on behalf of others similarly situated. The Bureau returned the petition with a notation that a separate petition would need to be filed for each employee. Brendley attempted to appeal the rejection of his "class action claim petition" to the Bureau's Administrative Division, but the appeal letter was returned with a notation that the attached copy of the claim petition was a two-sided copy. Brendley avers there was no further response to the appeal.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626.

2. Brendley appealed the court of common pleas' order to the Superior Court. After the submission of briefs and oral argument, however, Brendley filed an application to discontinue that appeal. The Superior Court has not acted on the application for discontinuance, and the case appears to be awaiting decision.

## C. Declaratory Judgment Action in Commonwealth Court

### 1. Petition

In October 2006, Brendley filed his Petition in this Court's original jurisdiction. Through his Petition, Brendley "respectfully requests that this Honorable Court make a declaration as to whether the [Act] provides compensation for uninjured claimants seeking medical monitoring and whether the Act provides a class action claim petition for a large group of claimants seeking medical monitoring." Pet. for Review at 7–8. In the Petition, Brendley avers he is a former employee of Employer. He alleges, since 1963, Employer owned and operated the Spring House Technical Center. Since its opening, Brendley alleges, that facility employed approximately 6,000 workers.

Brendley further alleges Employer admitted there is an elevated incidence of primary malignant brain cancer at its Spring House Technical Center and at least 12 employees of that facility were diagnosed with brain cancer, while others were diagnosed with other brain tumors. Brendley alleges the basis of his civil action was that he, along with other employees, past or present, may have been exposed to toxic agents in the workplace such that they are at a significantly heightened risk for developing brain cancer. He avers that through his civil suit he sought equitable relief in the form of medical monitoring to cover the costs associated with diagnostic testing to aid in the early detection of brain cancer as well as other brain tumors, for himself and all other similarly situated employees.

Brendley alleges he is not seeking individual compensation of any kind; rather, he seeks creation of a fund to cover the costs of long-term diagnostic testing and clinical examinations to detect brain cancers that may develop as a result of workplace exposures. Brendley avers neither he nor any other putative class member suffered a physical injury or occupational disease as a result of their dangerous exposures.

Brendley avers workers' compensation is available only for employees sustaining an injury during the course of their employment. He notes the Act defines the term "injury" "to mean an injury to an employe[e], regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated· or accelerated by the injury." Section 301(c) of the Act, 77 P.S. § 411(1). Brendley points out the term "injury" includes occupational diseases, subject to the limitations set forth in 77 P.S. § 411(2).

Brendley alleges our Supreme Court acknowledges the term "injury" as used in the Act is not actually defined. *Pawlosky v. Workmen's Comp. Appeal Bd. (Latrobe Brewing Co.)*, 514 Pa. 450, 525 A.2d 1204 (1987). He avers the Court applies the term to injuries "producing harm or pain or a lessened facility of the natural use of any bodily activity or capability." *Id.* at 459, 525 A.2d at 1209. Brendley avers our Supreme Court also holds asymptomatic conditions are not compensable because they represent no more than claims for anticipated physical harms that have not yet accrued. *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996). He states, in its most common usage, injury denotes a physical, discernible injury. *See Meadow Lakes Apartments v. Workers' Comp. Appeal Bd. (Spencer)*, 894 A.2d 214 (Pa. Cmwlth.2006). Because persons seeking medical monitoring exhibit no signs or symptoms of injury, Brendley alleges, it is unclear whether they are harmed or injured as required by the Act; therefore, he avers, it is unclear if there is any

compensation or remedy available to them under the Act.

Moreover, Brendley avers, under the Act, an employee must either receive medical treatment for an injury or suffer a loss of earning capacity due to injury. Because he is not seeking the cost of medical treatment related to cancer or wage loss benefits due to injury or illness, he alleges, it does not appear workers' compensation benefits are available to provide the relief he seeks.

He avers, however, the court of common pleas ruled the Bureau may appropriately decide his claim. He alleges the Bureau does not appear capable or competent to hear a medical monitoring claim or any class action claim. Moreover, he avers that the Act makes no mention of class actions as an acceptable procedural device for bringing claims. Brendley further alleges, due to the absence of a class claim petition as a procedural device for bringing a workers' compensation action on behalf of a large group of claimants, it is unclear if the Act provides for such an action.

## 2. Preliminary Objections

In response to Brendley's Petition, the Bureau and Employer filed preliminary objections, asserting: this Court lacks subject matter jurisdiction; Brendley failed to exhaust administrative remedies; Brendley does not aver facts to show the existence of an actual controversy; and, the Petition is merely an untimely appeal of the Bureau's rejection of Brendley's class action claim petition. In addition, the Board objects it is not a proper party to this suit.

The Bureau asserts this Court lacks subject matter jurisdiction over this suit. More specifically, it contends Brendley's Petition seeks relief in the form of a declaration as to whether the Act provides compensation for claimants seeking medical monitoring. The Bureau argues this Court's original jurisdiction does not include authority to conduct proceedings or render initial determinations on the compensability of work injury claims under the Act. Rather, it asserts, original jurisdiction over such claims is vested exclusively in the Workers' Compensation Judges (WCJ) of the Department of Labor and Industry. The Bureau contends this Court lacks original jurisdiction over the subject matter here since Brendley seeks a declaration concerning the compensability of a workers' compensation claim. It contends Brendley must properly pursue an action and obtain a final determination on the compensability of that claim before a WCJ and then the Board, before seeking judicial review under this Court's appellate jurisdiction.

The Bureau maintains a declaratory judgment action cannot be maintained "with respect to any [p]roceeding within the exclusive jurisdiction of a tribunal other than a court." See Section 7541(c)(2) of the Declaratory Judgments Act (DJA), 42 Pa.C.S. § 7541(c)(2). It further notes a WCJ is a "tribunal" within the meaning of this exception to the DJA. Ruszin v. Dep't of Labor & Indus., Bureau of Workers' Comp., 675 A.2d 366 (Pa.Cmwlth.1996).

## 3. Brendley's Response

Brendley responds the DJA is remedial in nature; its purpose is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered." Section 7541(a) of the DJA, 42 Pa.C.S. § 7541(a). Brendley acknowledges the DJA excepts proceedings "within the exclusive jurisdiction of a tribunal other than a court" and proceedings "involving an appeal from an order of a tribunal." 42 Pa.C.S. §§ 7541(c)(2), (3). Nevertheless, he argues this Court retains original jurisdiction over "all civil actions or proceedings (a)gainst the Commonwealth government."

42 Pa.C.S. § 761(a)(1). Brendley further asserts the DJA does not preclude this Court from hearing his Petition because this Court retains original and exclusive jurisdiction over all matters against the Commonwealth government, including claims against the Department.

## II. Discussion

In considering preliminary objections, we must accept as true all well-pled allegations of material fact and all inferences reasonably deducible from those allegations. *See City of Phila. v. Rendell,* 888 A.2d 922 (Pa.Cmwlth.2005). We need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations or expressions of opinion. *Id.*

### A. Injury

Through his Petition, Brendley "respectfully requests that this Honorable Court make a declaration as to whether the [Act] provides compensation for uninjured claimants seeking medical monitoring and whether the Act provides a class action claim petition for a large group of claimants seeking medical monitoring." Pet. for Review at 7–8. As to whether the Act provides compensation for uninjured claimants seeking medical monitoring, in his Petition, Brendley avers:

13. Neither [he] nor any other putative class member has suffered a physical injury or occupational disease as a result of their dangerous exposures.

14. Workers' compensation is available only for employees sustaining an injury during the course of their employment. 77 P.S. § 1.

15. Injury is "defined" at 77 P.S. § 411(1) "to mean an injury to an employe[e], regardless of his previous physical condition, arising in the course of his employment, and related thereto, and such disease and infection as naturally results from the injury or is aggravated,

reactivated or accelerated by the injury." 77 P.S. § 411(1).

Pet. for Review at ¶¶ 13–15.

Although Brendley avers neither he nor any other putative class member sustained an injury under the Act, this Court holds the question of whether an injury is compensable under the Act is a question of *law* fully reviewable by this Court. *See Moonblatt v. Workmen's Comp. Appeal Bd. (City of Phila.),* 85 Pa.Cmwlth.128, 481 A.2d 374 (1984); *Firestone Tire & Rubber Co. v. Workmen's Comp. Appeal Bd. (Smallen),* 40 Pa.Cmwlth.142, 396 A.2d 902 (1979); *Workmen's Comp. Appeal Bd. v. Hamilton,* 21 Pa.Cmwlth. 425, 346 A.2d 387 (1975); *Holland v. Workmen's Comp. Appeal Bd.,* 16 Pa.Cmwlth. 367, 332 A.2d 834 (1975). Thus, we need not accept as true Brendley's averment that neither he nor any other putative class member sustained an injury under the Act. *Rendell.*

As to whether Brendley sustained an "injury" under the Act, both this Court and our Supreme Court liberally interpret the term "injury" as used in the Act. The Supreme Court broadly defines the term to encompass all work-related harm including "any hurtful or damaging effect which may be suffered by anyone." *Pawlosky.* In addition, both this Court and the Supreme Court hold "risk of harm" may, under certain circumstances, constitute a compensable injury. *See Id.; Lash v. Workmen's Comp. Appeal Bd. (Gen. Battery Corp.),* 491 Pa. 294, 420 A.2d 1325 (1980); *Jackson Twp. Volunteer Fire Co. v. Workmen's Comp. Appeal Bd. (Wallet),* 140 Pa.Cmwlth.620, 594 A.2d 826 (1991) (*en banc* ).

As to whether Brendley's claim may be compensable even though his condition does not manifest physical symptoms, our Supreme Court's decision in *Lash* is helpful. In *Lash,* the employer, a manufacturer of lead-lined batteries, transferred two claimants from positions that exposed

them to lead to lower-paying jobs with no lead exposure because, based on prior exposure, they became lead absorbers. Since the positions were less remunerative than their former lead hazard positions, the claimants sought occupational disease benefits for the loss of earnings. A referee denied benefits, concluding as a matter of law the claimants did not prove they sustained a work injury or occupational disease under the Act. This Court agreed, noting:

> [T]he claimants testified that *they enjoy good health and that they could have continued in their higher paying positions.* Moreover, *each claimant admitted that he had not sought medical attention for any symptoms relating to lead poisoning.* It is therefore not surprising that the only 'medical' evidence offered on behalf of the claimants was the blood-lead charts kept by [the employer] and letters written by a physician apparently retained by [the employer], which recommended that, as a preventive measure, each claimant be kept out of lead-exposed areas.

*Lash v. Workmen's Comp. Appeal Bd. (Gen. Battery Corp.),* 30 Pa.Cmwlth.124, 372 A.2d 1265, 1266 (1977) (emphasis added). On further appeal, however, our Supreme Court reversed. The Court held the claimants contracted the occupational disease of lead poisoning and further exposure to lead would endanger their health despite the fact the claimants were "in good health" and asymptomatic. Holding the claimants were eligible for partial disability benefits due to their loss of earning power because they were precluded from performing jobs that required lead exposure, the Court stated "[t]hat [the claimants'] health had not yet deteriorated to the advanced stages of lead poisoning does

not mean that they were not suffering from a compensable injury." *Id.* at 297, 420 A.2d at 1326.

Based on our Supreme Court's decision in *Lash,* Brendley and other similarly situated claimants may be entitled to workers' compensation benefits based on exposure to hazardous materials despite the fact they remain in good health and are asymptomatic. In other words, contrary to Brendley's averments, a "risk of harm" from exposure to hazardous materials may be a compensable "injury" under the Act. Thus, although Brendley repeatedly avers (as a legal conclusion) neither he nor any other putative class member sustained an injury within the meaning of the Act, the "risk of harm" alleged may be compensable based on our Supreme Court's decision in *Lash.*

### B. Medical Monitoring

As to the relief sought, the costs associated with "medical monitoring," in an analogous case this Court held a request for medical monitoring based on occupational exposure to infectious diseases falls within the Act's broad definition of "injury." *See Jackson Twp. Volunteer Fire Co.* (paramedic exposed to blood infected with AIDS and hepatitis B while attending to crash victims entitled to payment for tests necessary to determine if he contracted viruses; exposure to highly contagious/infectious diseases constitutes "injury" under the Act). In addition, it is undisputed that medical costs are payable under the Act even when there is no loss of earnings or no compensable disability. *Id.*

In short, based on the liberal interpretation given to the term "injury" contained in the Act, and the decisions in *Lash* and *Jackson,* it appears Brendley may have a compensable claim against Employer.[3]

---

**3.** Moreover, *Simmons,* relied on by Brendley for the proposition that asymptomatic conditions are not compensable, is inapplicable

here. In *Simmons,* our Supreme Court held asbestos-related pleural thickening, unaccom-

### C. Remedy under the Act

█ Having determined as a matter of law that Brendley's claim may be compensable under the Act, we now consider the appropriate remedy. We note that the Act provides the exclusive means by which a covered employee can recover against an employer for an "injury" sustained in the course of his employment. 77 P.S. § 481. Claims seeking benefits under the Act are initially assigned to a WCJ, who possesses jurisdiction to conduct hearings, make a record and issue an initial decision on the merits regarding the compensability of an employee's claim. *See* Sections 410, 414 and 418 of the Act, 77 P.S. §§ 751, 775, 833.

Thus, a determination as to the compensability of Brendley's claim for medical monitoring must first be made by a WCJ. Such a determination can be made if Brendley properly files an individual claim petition with the Bureau, which, in turn, would assign the case to a WCJ for hearing. If other former or current employees wish to file similar claims, they could do so, and the petitions could be consolidated before a WCJ. *See* 34 Pa.Code § 131.30(a).[4] This leads to the second remedy issue raised by Brendley's Petition: whether the Act provides a procedural mechanism for pursuing a class action claim petition.

█ Before the Bureau, Brendley sought to pursue a "class action claim petition" despite the fact that neither the Act nor its attendant regulations expressly permit class action suits. Rather, the rules that govern class actions are set forth in Pa. R.C.P. Nos. 1701–1716, and the Rules of Civil Procedure are inapplicable in workers' compensation proceedings. *See, e.g., Ace Tire Co. v. Workmen's Comp. Appeal Bd. (Hand)*, 101 Pa.Cmwlth.186, 515 A.2d 1020 (1986).

While no Pennsylvania case specifically addresses the propriety of class action suits in workers' compensation proceedings, this Court generally holds class actions are unauthorized in the administrative setting. *See Sullivan v. Commonwealth, Ins. Dep't*, 48 Pa. Cmwlth. 11, 408 A.2d 1174 (1979). In *Sullivan*, we stated:

> The [Insurance] Commissioner rejected the petitioners' assertion of class status because, he argues, class actions are unnecessary in the administrative setting and unauthorized by the applicable law. We agree. In the first place, the General Rules of Administrative Practice and Procedure deal with the problem of similarly situated parties by providing for the intervention of interested parties in on-going proceedings and for the consolidation of proceedings which raise similar issues; and no evidence indicates that these mechanisms are inadequate. In the second place, the proper use of a class action is a complex and controversial policy issue, *see* 5 Goodrich–Amram 2d s 1710:1 (Supp.

panied by physical impairment, did not constitute a sufficient physical injury to warrant damages in a tort action for the "risk and fear of cancer," "mental anguish" or "the loss of life's pleasures." *Id.* at 670, 674 A.2d at 235. Notably, *Simmons* did not involve a claim for workers' compensation benefits under the Act. More importantly, in *Simmons,* our Supreme Court held that damages for expenses incurred in the medical surveillance of asymptomatic pleural thickening were recoverable. Specifically, the Court held "[a]l-though ... awarding damages for the increased risk and fear of cancer is contrary to the established jurisprudence of this Commonwealth ... *recovery for medical monitoring is appropriate and just.*" *Id.* at 679–80, 674 A.2d at 240 (emphasis added). Thus, *Simmons* does not support Brendley's position here.

4. It would appear, however, a single decision on Brendley's claim could have a preclusive effect as to Employer.

1979), and *we do not think the right to assert class standing in an administrative proceeding should be inferred in the absence of a statute or rule specifically conferring and defining such a right.* *Id.* at 1176 (emphasis added). *Cf. Harveys Lake Borough Taxpayers Ass'n v. Harveys Lake Borough Zoning Hearing Bd.,* 71 Pa.Cmwlth. 631, 455 A.2d 762 (1983) (Pennsylvania Municipalities Planning Code does not provide a procedure analogous to the rules governing class action suits permitted by the rules of civil procedure; as such, no class action suit permitted).

In the workers' compensation arena, the Court of Appeals of Michigan reached a similar result, explaining:

There has been some discussion by the parties of whether the bureau [of workmen's compensation] even has the power to conduct a class action hearing. To some extent this question may turn on whether a class action suit is inherently equitable in nature and, thus, not permissible before an administrative agency having no equitable powers, or whether class actions are merely procedural devices to expedite proceedings in certain cases, not requiring equitable jurisdiction. Even if the latter is true, and a class action is merely a procedural joinder device not requiring jurisdiction not possessed by the bureau, *administrative rules permitting and regulating such class actions, if not explicit statutory authority doing so, would clearly be necessary to permit their use.* That is, while we need not and do not decide whether the bureau, under properly promulgated administrative rules, could entertain claims brought in the nature of a class action, *it certainly does not have the authority to do so absent either an* explicit statutory grant of powers or such administrative rules.

*Stein v. Dir., Bureau of Workmen's Comp.,* 77 Mich.App. 169, 258 N.W.2d 179, 182 (1979) (citations omitted) (emphasis added). We find this reasoning equally applicable here. In short, absent express authority permitting the filing of a "class action claim petition," Brendley should properly file an individual claim petition to have a determination made, by a WCJ in the first instance, as to whether his medical monitoring claim is compensable. Any aggrieved party could pursue an appeal before the Board and, if desired, take a further appeal to this Court, thereby invoking this Court's appellate jurisdiction.

For these reasons, we sustain the Bureau's preliminary objection to lack of subject matter jurisdiction and dismiss Brendley's Petition.[5]

### *ORDER*

AND NOW, this 26th day of June, 2007, the preliminary objection of the Pennsylvania Department of Labor and Industry and the Pennsylvania Bureau of Workers' Compensation to lack of subject matter jurisdiction is **SUSTAINED**, without prejudice to further proceedings before the workers' compensation authorities.

---

**5.** Based on our disposition, we need not address the remaining preliminary objections filed by the Bureau, Employer and the Board.