**Scott ARNOLD, Petitioner**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (LACOUR PAINTING, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 25, 2014.

Decided Jan. 28, 2015.

David R. Cherry, Media, for petitioner.

R. Burke McLemore, Jr., Harrisburg, for respondent.

BEFORE: RENÉE COHN JUBELIRER, Judge, and ROBERT SIMPSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Scott Arnold (Claimant) petitions for review of orders of the Workers' Compensation Appeal Board (Board) that (i) affirmed the decision and order of a Workers' Compensation Judge (WCJ) granting in part and denying in part a Petition to Review Medical Treatment and/or Billing (Review Petition) filed by Claimant and (ii) denied a Petition for Specific Loss Benefits (Specific Loss Petition) filed directly with the Board. Finding no error, we affirm.

On December 19, 2007, Claimant sustained a work-related injury to his lumbar and thoracic spine during the course of his employment with Lacour Painting, Inc. (Employer). (May 16, 2012 WCJ Decision and Order (WCJ Decision), Finding of Fact (F.F.) ¶ 1.) Employer thereafter issued a Notice of Temporary Compensation Payable, indicating Claimant's injury was a "burst fracture at L1, bilateral displaced transverse process fractures at L1, nondisplaced fracture through the bilateral lamina and sinousprocess at T12." (*Id.;* Notice of Temporary Compensation Payable, Reproduced Record (R.R.) at 3a–4a.) Pursuant to the Notice, Claimant began receiving weekly compensation of $389.50 based

on an average weekly wage of $520.96. (WCJ Decision, F.F. ¶ 2; Notice of Temporary Compensation Payable, R.R. at 3a; Statement of Wages, R.R. at 5a.)

On November 30, 2011, Claimant filed the Review Petition alleging that he had suffered specific loss of the use of both legs separate and apart from his accepted injury. (R.R. at 7a–9a.) At a hearing held before the WCJ on the Review Petition, Claimant testified that he was working as a painter for Employer on December 19, 2007 when he was thrown off a scissor lift that had tipped over, falling approximately 35 feet and landing on his buttocks. (Hearing Transcript (H.T.) at 9, R.R. at 62a.) Claimant was transported to Milton S. Hershey Medical Center where he underwent back surgery. (Id. at 9–10, R.R. at 62a–63a.) Following the surgery, Claimant has been confined to a wheel chair, and though he can stand on his left leg, Claimant testified that his right leg feels dead and he cannot walk more than a few steps. (Id. at 10–12, R.R. at 63a–65a.) Claimant stated that he has regained some feeling in his left leg to his knee, but no feeling has returned in his lower left leg or his entire right leg. (Id. at 10, 13–14, R.R. at 63a, 66a–67a.) Claimant testified that he suffers from lower back pain, but this pain by itself would not prevent him from returning to work. (Id. at 11, 14–16, R.R. at 64a, 67a–69a.)

Claimant submitted to the WCJ medical records regarding his surgery and treatment at the Milton S. Hershey Medical Center and subsequent rehabilitation at Magee Rehabilitation Hospital. (Exhibits C–2 and C–3, R.R. at 76a–86a.) Although not marked as an exhibit at the hearing and not appearing in the certified record on appeal, the WCJ indicated in his decision that Claimant also submitted a March 22, 2012 narrative report of Guy W. Fried, M.D., of Magee Rehabilitation who began treating Claimant one week after the injury. (WCJ Decision, F.F. ¶ 7.) The WCJ found that Dr. Fried opined that Claimant suffered from incomplete paraplegia, neurogenic bowel and bladder movement, chronic and persistent pain as a result of the work injury, and that Claimant had an ongoing unresolved spinal fracture injury with residual problems separate and apart from the loss of use of both his legs. (Id., F.F. ¶ 7(b).)

On May 16, 2012, the WCJ issued a decision and order granting in part and denying in part Claimant's Review Petition. The WCJ found Claimant's testimony and Dr. Fried's narrative report credible and persuasive and found that Claimant had proven "a total loss of use of both of his legs as a result of the December 19, 2007 work injury, as of the date of his work injury, for all practical intents and purposes." (WCJ Decision, F.F. ¶¶ 10–12, Conclusion of Law (C.L.) ¶ 2.) The WCJ concluded that, pursuant to Section 306(c)(23) of the Workers' Compensation Act (Act), Claimant was entitled to total disability benefits under Section 306(a) of the Act.[1] (WCJ Decision, C.L. ¶ 2.) However, the WCJ denied the Review Petition insofar as it sought specific loss benefits, concluding that only the Board had authority under Section 306(c)(23) to determine whether Claimant's loss of use of his legs could be characterized as anything other than a total disability benefit. (Id., C.L. ¶ 3.) The WCJ declined to make any credibility determination or finding concerning whether Claimant's total loss of use of his legs was separate and distinct from that which would normally follow from Claimant's work injury because, in his

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 511, 513(23).

view, this authority rested exclusively with the Board. (*Id.* at 3 n. 1.)

▮ Claimant appealed the WCJ's decision and order to the Board and also filed the Specific Loss Petition with the Board requesting that the Board award him specific loss benefits for the total loss of use of both legs pursuant to Section 306(c)(23) of the Act. The Board affirmed the WCJ's decision and order and denied the Specific Loss Petition without taking additional evidence. In its opinion,[2] the Board determined that Section 306(c)(23) created a presumption in favor of total disability, and that its role was confined to determining whether another provision would prove more beneficial to Claimant. The Board discussed our Supreme Court's decision in *Turner v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp.)*, 479 Pa. 618, 389 A.2d 42 (1978), in which the Court affirmed the Board's modification of an award from total disability to specific loss because the award of specific loss benefits was more economically advantageous to the claimant under his union contract. However, the Board distinguished Claimant's situation from *Turner*, because here Claimant did not want to choose between two types of compensation but rather was seeking both total disability and specific loss to be paid concurrently. The Board observed that there are scenarios where a claimant may receive multiple awards for injuries arising out of one work incident, such as where a claimant sustains separate specific loss injuries to different parts of the body or where a claimant

sustains a specific loss injury that causes a separate and distinct injury to another part of the body. The Board observed, however, that in the instant matter the WCJ specifically noted that he was not making a finding or legal conclusion that Claimant had suffered a loss of the use of his legs that was separate and apart from his accepted back injury. The Board therefore concluded that despite the discretion afforded to it under Section 306(c)(23), it was unable to grant Claimant the relief sought of an award of specific loss benefits paid concurrently with total disability benefits and declined to modify Claimant's award of ongoing total disability benefits. Claimant petitioned this Court for review of the Board's orders.[3]

▮ Before reaching the issues raised by Claimant's appeal, we first address Employer's argument that Claimant's appeal should be dismissed because Claimant failed to include "[a] short conclusion stating the precise relief sought" in his brief as required by Rule of Appellate Procedure 2111(a)(9). While an appeal may be dismissed or quashed when a defect in a brief is "substantial," Pa. R.A.P. 2101, we may ignore even "egregious violations" of the Rules of Appellate Procedure if these defects do not preclude meaningful appellate review. *Richardson v. Pennsylvania Insurance Department*, 54 A.3d 420, 426 (Pa.Cmwlth.2012) (quoting *Seltzer v. Department of Education*, 782 A.2d 48, 53 (Pa.Cmwlth.2001)). Our Supreme Court has cautioned that the "extreme action of dismissal should be imposed by an appel-

---

**2.** The Board issued two identical opinions and orders on the same date under separate docket numbers for the Review Petition and the Specific Loss Petition. Because they are identical, we refer and cite to the two Board opinions as one opinion.

**3.** This Court's scope of review of an order of the Board is limited to determining whether

there has been a violation of constitutional rights, an error of law or a violation of relevant regulations of the Board and whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Miller v. Workers' Compensation Appeal Board (Wal–Mart)*, 44 A.3d 726, 727 n. 2 (Pa.Cmwlth. 2012).

late court sparingly, and clearly would be inappropriate when there has been substantial compliance with the rules and when the moving party has suffered no prejudice." *Stout v. Universal Underwriters Insurance Co.,* 491 Pa. 601, 421 A.2d 1047, 1049 (1980); *see also Giovagnoli v. State Civil Service Commission (Monroe County Children and Youth Services),* 581 Pa. 655, 868 A.2d 393, 399 (2005). Here, while Claimant did not include a separate heading at the end of his brief for a conclusion, the last several paragraphs of Claimant's brief make clear what he seeks from this appeal: the reversal of the Board's order and remand to the Board for an order that would place Claimant's total disability benefits in suspension status and grant two specific loss awards that would double his current benefits from $389.50 per week to $779.00 per week for the duration of the specific loss period. Therefore, Claimant's only dereliction of the Rules of Appellate Procedure is his failure to include a separately denominated conclusion section in his brief. We conclude that this failure did not prejudice Employer and does not preclude our meaningful review of Claimant's appeal.

■ Claimant first argues that the Board violated his due process rights by not holding an evidentiary hearing on the Specific Loss Petition and allowing him an opportunity to appear in person before the Board and testify on the issue of why specific loss benefits would be more beneficial to him than the total disability benefits he is currently receiving. Employer argues that Claimant chose to raise identical issues in the Review Petition and he had already been allowed to testify and present before the WCJ in that proceeding; Employer contends that there is no practical necessity or constitutional imperative for Claimant being allowed to present the same duplicative evidence before the Board on the Specific Loss Petition.

■ The essential elements of procedural due process are notice and an opportunity to be heard. 2 Pa.C.S. § 504; *Pennsylvania Bankers Association v. Pennsylvania Department of Banking,* 598 Pa. 313, 956 A.2d 956, 965 (2008); *Johnson v. Workers' Compensation Appeal Board (Sealy Components Group),* 982 A.2d 1253, 1257 (Pa.Cmwlth.2009). Due process requires that a tribunal with competent jurisdiction conduct "an orderly, regular proceeding appropriate to the nature of the case." *Fiore v. Board of Finance and Revenue,* 534 Pa. 511, 633 A.2d 1111, 1114 (1993) (emphasis omitted); *see also Department of Transportation, Bureau of Driver Licensing v. Clayton,* 546 Pa. 342, 684 A.2d 1060, 1064–65 (1996). Nevertheless, "constitutional procedural due process is a flexible concept, and thus, implicates procedural protections as each particular situation demands." *Chester Water Authority v. Pennsylvania Public Utility Commission,* 581 Pa. 640, 868 A.2d 384, 391 (2005); *Clayton,* 684 A.2d at 1064.

■ While a party in an administrative hearing must always have an opportunity to be heard, neither due process nor the Administrative Agency Law require an evidentiary hearing be held in every case. *Chester Water Authority,* 868 A.2d at 391–93; *Manor v. Department of Public Welfare,* 796 A.2d 1020, 1028 n. 11 (Pa.Cmwlth. 2002); *Denier v. State Board of Medicine, Bureau of Professional and Occupational Affairs,* 683 A.2d 949, 953 (Pa.Cmwlth. 1996). Thus, while a WCJ will typically hold at least one evidentiary hearing in each new matter, the WCJ is not required to hold an evidentiary hearing for every petition, such as for a petition where there are no contested facts. *Karotka v. Workers' Compensation Appeal Board (Millcreek Community Hospital),* 840 A.2d

1040, 1043 (Pa.Cmwlth.2003) (holding that the rules of administrative practice and procedure before WCJs do not require a full evidentiary hearing in every case); *see also* Section 418 of the Act, 77 P.S. § 833 ("The referee to whom a petition is assigned for hearing, may subpoena witnesses, order the production of books and other writings, and hear evidence ..."); 34 Pa.Code § 131.52(g) ("Unless otherwise ordered by the judge, the moving party shall present testimony.").

Complicating our analysis of what process was due here is the fact that Claimant did not just appeal the WCJ's determination on his Review Petition but also filed the Specific Loss Petition directly with the Board. Generally, in worker's compensation cases, a petition is filed with the Bureau of Workers' Compensation (Bureau) and then the petition is assigned to a WCJ to make an initial determination on the petition; this determination is then appealable to the Board acting as an appellate body. Sections 414, 418 and 423(a) of the Act, 77 P.S. §§ 775, 833, 853; *Brendley v. Department of Labor and Industry*, 926 A.2d 1276, 1282 (Pa.Cmwlth.2007). This is the procedure that was followed for the Review Petition filed by Claimant. In certain limited instances where explicitly authorized in the Act, such as for the Specific Loss Petition filed here pursuant to Section 306(c)(23), a petition may also be filed directly with the Board to hear in its original jurisdiction. *See* 77 P.S. § 513(23) ("*Unless the board shall otherwise determine,* the loss of both hands or both arms or both feet or both legs or both eyes shall constitute total disability, to be compensated according to the provisions of [Section

306(a) ].") (emphasis added); *see also Turner,* 389 A.2d at 46; *Symons v. National Electric Products, Inc.,* 414 Pa. 505, 200 A.2d 871, 875–77 (1964). Board regulations provide that the Board may refer an original jurisdiction petition to a WCJ to hold a hearing and issue a proposed adjudication, but an evidentiary hearing is not required. 34 Pa.Code § 111.35(d) ("The Board may, if appropriate, or will, if required by law, refer a petition or request to a judge for conducting hearings, preparing findings or proposed orders.").

In the instant matter, we discern no violation of Claimant's due process rights by the Board's failure to hold an evidentiary hearing on the Specific Loss Petition. The Board considered the Specific Loss Petition simultaneously with the WCJ's denial of the Review Petition; these two petitions seek essentially the same relief, an award of specific loss benefits. Thus, the Board already had the benefit of the record that the WCJ had developed on the Review Petition, including Claimant's medical records and his testimony before the WCJ to explain the mechanism of his injury, his treatment and his current condition.

Moreover, there is nothing about the Specific Loss Petition that would require the Board to accept more evidence beyond what was already in the record for the Review Petition. As we recently explained in *Fields v. Workers' Compensation Appeal Board (City of Philadelphia),* 104 A.3d 79 (Pa.Cmwlth.2014), the Board's discretion pursuant to a petition for specific loss benefits under Section 306(c)(23) is confined to two issues: (i) limiting the presumption of total disability for bilateral losses,[4] and (ii) determining that a claim-

---

4. Though not relevant in this case, the Board has the authority under Section 306(c)(23) to grant a modification petition filed by an employer to depart from the statutory presumption in favor of total disability benefits and

instead award the claimant specific loss benefits where the claimant has returned to work. *See Fields,* 104 A.3d at 82 n. 6. For example, in *Symons,* our Supreme Court held that the Board properly exercised its discretion under

ant with a bilateral loss is entitled to specific loss benefits where those benefits prove to be more financially advantageous than total disability benefits. *Fields*, 104 A.3d at 81–82. In this instance, the issue presented by the Specific Loss Petition was confined to addressing the second question. The evidence necessary for this determination had already been introduced to the WCJ as a result of its adjudication on the nearly identical Review Petition; accordingly, the Board did not err by not taking any additional evidence before issuing an opinion on the Specific Loss Petition.

 Claimant next argues that the Board "re-wrote" the WCJ's credibility finding regarding Dr. Fried's opinion that Claimant's accepted back injury was separate and apart from his loss of the use of his legs.[5] Claimant focuses on the Board's statement that:

> [T]he WCJ here specifically noted that he made no determination on the evidence as to whether Claimant's specific loss injury was separate and distinct from that which normally flows from the work injury, and he made no determination as to whether Claimant had a separate and distinct injury or disability.

(Board Op. at 7–8.) Claimant argues that this statement by the Board ignores the WCJ's finding of fact that:

> Section 306(c)(23) in altering a referee's award from total disability benefits to specific loss benefits for a claimant with a double amputation who had returned to work with his pre-injury employer and was earning more than his pre-injury wage. *Cf. Allegheny Power Service Corp. v. Workers' Compensation Appeal Board (Cockroft)*, 954 A.2d 692 (Pa. Cmwlth.2008) (en banc) (holding that Board properly exercised its discretion under Section 306(c)(23) in rejecting the employer's modification petition upholding a total disability award where the claimant suffered a

Dr. Fried opined that Claimant has an ongoing unresolved spinal fracture injury with residual problems that are separate and apart from the loss of use of his legs for all practical intents and purposes.

(WCJ Decision, F.F. ¶ 7(b).) Claimant argues that, in light of the fact that the WCJ credited Dr. Fried's testimony, (*id.*, F.F.¶ 11), and no contrary medical evidence was presented, the Board improperly dismissed the WCJ's conclusion that Dr. Fried credibly testified that Claimant's back injury and loss of use of both legs were separate and distinct injuries.

This argument is meritless. As Claimant concedes, while the WCJ found Dr. Fried's testimony credible that Claimant suffered a total loss of use of both of his legs, the WCJ explicitly stated in a footnote that he was "not making a credibility determination or a finding as to whether Claimant's total loss of use of his legs is a[sic] separate and distinct from that which would normally follow from his work injury." (WCJ Decision at 3 n. 1.) The WCJ further noted that "[j]urisidiction for determining whether Claimant's total loss of use of both legs constitutes anything other than total disability rests exclusively with the" Board. (*Id.*)

Reading the WCJ's decision as a whole, it is beyond doubt that the WCJ did not make a finding of fact or a conclusion of

---

loss of a hand and forearm but had returned to work).

**5.** As described above, Dr. Fried's narrative report was not included in the record before the Board on the appeal of the Review Petition and does not appear in the certified record on appeal to this Court. Neither party disputes the WCJ's findings regarding Dr. Fried's report, and therefore its absence from the certified record does not hinder our review of the issues presented by Claimant in his appeal.

law that Claimant's loss of use of both his legs was a separate and distinct injury from that of the accepted back injury. While the WCJ did credit Dr. Fried's opinion generally and the WCJ did find that Dr. Fried *opined* that Claimant's total loss of use of his legs was separate and apart from the accepted injury, the WCJ included unambiguous language in the footnote of his decision negating any finding or credibility determination that Claimant suffered a separate and distinct injury from his acknowledged injury. The challenged statement by the Board merely rearticulates that the WCJ made no findings or credibility determination on whether there was a separate and distinct injury.

Claimant's final argument on appeal is that the Board improperly refused to exercise its discretion under Section 306(c)(23) and grant him two specific loss benefit awards in place of total disability benefits award. Before we turn to the merits of this argument, however, we first must address Employer's contention that Claimant waived the argument that he is entitled to two specific loss benefits, one for the loss of use of each leg, because this argument was not raised below before the WCJ and the Board. Employer argues that Claimant's specific loss claim has shifted during the course of the proceedings and that whereas below Claimant sought to double his weekly benefits by adding one specific loss award to the total disability benefits he has already been receiving, Claimant now for the first time on appeal seeks two specific loss awards, one for each leg, in lieu of total disability benefits.

■ We may not consider an issue on appeal unless it is preserved at every stage of the proceeding below. Pa. R.A.P. 1551(a); *GMS Mine Repair & Maintenance, Inc. v. Workers' Compensation Appeal Board (Way)*, 29 A.3d 1193, 1197 (Pa. Cmwlth.2011). However, the question here is not whether Claimant raised a completely novel issue on appeal—there is no dispute that Claimant sought specific loss benefits before the WCJ and the Board—but rather whether Claimant's specific loss claim has transformed into something fundamentally different on appeal. Our courts permit a litigant to make new arguments on appeal in support of a preserved issue, *Wert v. Department of Transportation, Bureau of Driver Licensing*, 821 A.2d 182, 186 n. 9 (Pa.Cmwlth. 2003); *Doe–Spun, Inc. v. Morgan*, 93 Pa. Cmwlth. 447, 502 A.2d 287, 289 (1985), but do not permit a party to advance an entirely new and different theory of relief for the first time on appeal. *Foster v. Mutual Fire, Marine and Inland Insurance Co.*, 544 Pa. 387, 676 A.2d 652, 658 (1996); *Fatzinger v. City of Allentown*, 140 Pa. Cmwlth. 62, 591 A.2d 369, 371 (1991).

■ We agree with Employer that Claimant's specific loss arguments below were muddled and imprecise. No better evidence of the convoluted nature of Claimant's arguments is needed than the fact that the relief Claimant requests of this Court on appeal—two specific loss benefits awards paid concurrently with suspended total disability benefits—is not the same issue that the Board addressed and rejected below of whether Claimant could elect to receive specific loss and total disability benefits.[6] Nevertheless, we con-

---

6. Put another way, on appeal Claimant argues that he should be able to elect to double his effective weekly benefit rate of 66 and 2/3% of his average weekly wages because he sustained a specific loss of both legs while the Board interpreted Claimant to be seeking to double his benefits by adding one specific loss award to his existing total disability. *See* Board Op. at 6 ("Here, Claimant is not, in fact, seeking to elect between the two types of compensation because payment of specific loss benefits would be more economically ad-

clude that the confusion engendered below regarding the exact nature of Claimant's argument was the result of Claimant's imprecise and inconsistent draftsmanship rather than an attempt to change course and offer a completely new theory of relief on appeal. While some portions of the Specific Loss Petition suggest that Claimant was seeking one specific loss award to be paid concurrently with total disability benefits, other statements in the Specific Loss Petition are consistent with Claimant's argument on appeal that he wishes to elect two specific loss benefit awards to be paid concurrently with each other with his total disability benefits suspended. (Specific Loss Petition ¶ 8 ("The humanitarian purposes of the Act would be better served by allowing the Claimant to collect an additional $389.50 per week for each leg in specific loss benefits rather than restricting the Claimant to receive total disability benefits for life."), R.R. at 21a–22a.) Furthermore, Claimant's appeal of the WCJ's decision on the Review Petition, which Claimant indicated could be treated as a petition for specific loss benefits, states that "Claimant elects to receive specific loss benefits pursuant to Section 306(c)(23) rather than a lifetime award of [total disability] benefits for the loss of both his legs." (R.R. at 16a–17a.) Accordingly, we decline to rule that Claimant waived his argument on appeal that he was entitled to two specific loss benefit awards.

Therefore, we turn to the merits of the argument raised in Claimant's appeal: whether the Board erred in refusing to exercise its discretion under Section 306(c)(23) to allow Claimant to elect to receive two specific loss benefits, one for each leg, to be paid concurrently while the total disability benefits Claimant has been receiving are suspended until the specific loss payments run out. Both Claimant and Employer each cite our Supreme Court's decision in *Turner* as resolving this issue in their favor. In *Turner*, the claimant suffered a work injury that severed his spinal cord and rendered him paraplegic with complete loss of sensation below the chest. 389 A.2d at 42. The claimant initially received total disability benefits pursuant to Section 306(a) of the Act, but later petitioned to modify his benefits to an award of specific loss benefits for the loss of use of his legs. *Turner*, 389 A.2d at 43. The WCJ granted the modification petition and the Board affirmed. *Id.*

On appeal, our Supreme Court held that the claimant was entitled to elect to receive specific loss benefits rather than total disability benefits pursuant to Section 306(c)(23) and the Board made no error of law in exercising its discretion to alter the claimant's benefits. As the Court explained:

[Section 306(c)(23) ] explicitly gives to the Board the discretion to determine the optimum benefit available to a claimant within the statutory scheme. Section 306(a)'s total disability compensation is generally the most beneficial of the benefit schedules, providing, as it does, both the highest allowable compensation and the only compensation not limited to a maximum term of weeks. The only reasonable interpretation of Section [306(c)(23) ], especially in light of our duty to resolve borderline interpretations in favor of the injured employee, is that the legislature intended by this section to provide for the highest possible compensation for a claimant who has lost both legs. In most cases this is compensation based on total disability. The legislature nevertheless empowered

vantageous to him or would serve to protect his survivors. Instead, he is essentially seek-

ing an adjudication awarding him both types of compensation.").

the Board to determine otherwise should another provision prove more advantageous to the claimant.

*Turner,* 389 A.2d at 46 (citation omitted). The Court observed that while total disability benefits are generally more beneficial, the claimant in *Turner* was entitled to receive a permanent incapacity pension from his employer upon reaching age 65, and this pension was subject to a set off for total disability benefits but not for specific loss benefits. *Id.* at 43–44. The Court noted that the claimant had another financial motivation for electing specific loss benefits in addition to avoiding a pension set off, because if he died of causes unrelated to his work injury, specific loss benefits, unlike total disability benefits, would continue to be paid to his survivors for the appropriate period of weeks. *Id.* at 44. Thus, even though the claimant was entitled to the same weekly benefit amount for either specific loss or total disability, it was to the claimant's financial advantage to receive specific loss benefits rather than a total disability award. *Id.* at 43–44.

Our Supreme Court's decision in *Turner* makes clear that pursuant to Section 306(c)(23), a claimant who suffers a bilateral loss of arms, feet, legs or eyes may file a petition with the Board to elect to receive specific loss benefits instead of the default presumption of total disability benefits. However, *Turner* also makes clear that the determination as to whether to alter the presumption of total disability benefits is left to the discretion of the Board and that the Board is to be guided solely by whether the default presumption of total disability or an election of the specific loss benefits provides the "optimum benefit available to a claimant" and that the benefits the claimant elects fall "within the statutory scheme." *Turner,* 389 A.2d at 46; *see also Fields,* 104 A.3d at 81–82.

Claimant offers two reasons for why the Board should allow him to elect specific loss benefits in place of total disability benefits. First, Claimant argues that it would be more economically advantageous for him to receive two specific loss awards, one for each leg, at 66 and 2/3% of his weekly wages for 410 weeks, with each award at $389.50 per week for a total of $779.00 per week. This would in effect double his awards as Claimant is currently receiving $389.50 in total disability benefits pursuant to Section 306(a). Claimant asserts that his total disability benefits would be placed in suspended status while Claimant was receiving his specific loss benefits and that if he were to find employment that paid him less than his pre-injury average weekly wage of $520.50, he could then receive partial disability benefits for his lower back injury while continuing to receive $779.00 per week in specific loss benefits.

In *Fields,* we addressed the issue of whether benefits for two or more specific losses arising from the same work injury should be paid separately or concurrently. In that case, the claimant was initially awarded total disability benefits arising out of a 2003 work injury but was later granted specific loss benefits for the loss of her left arm and both of her legs related to that same incident, which would be payable when the total disability payments ceased. *Fields,* 104 A.3d at 79. The claimant brought a penalty petition challenging the employer's decision to not pay the three specific loss benefits concurrently; the WCJ concluded that the claimant could elect to receive specific loss benefits in place of total disability benefits but that she could not receive the multiple specific loss awards concurrently. *Id.* at 81. The Board affirmed the denial of the penalty petition in a *per curiam* order, but the Commissioners' vote was split equally on

the issue of whether the specific loss awards should be paid concurrently or consecutively. *Id.*

After reviewing the case law related to Section 306(c)(23), we concluded that the claimant's argument that she was entitled to the concurrent payment of multiple specific loss payments relating to a single incident went beyond our Supreme Court's holding in *Turner* and found no support in any other authority under the Act. *Fields,* 104 A.3d at 81–82. We noted that the claimant was not trying to increase the total amount of benefits to be paid, but rather only to provide herself with a higher weekly benefit paid over a shorter period of time, which was akin to a "back-door commutation request." *Id.* at 81–83. We concluded that there was no basis in *Turner* or Section 306(c) to treat a claimant's bilateral losses any differently than the bilateral loss of two or more fingers or toes, which must be paid consecutively. *Fields,* 104 A.3d at 81–83. Accordingly, we held that claimant's three specific loss awards must be paid consecutively with the period of weeks for each specific loss aggregated. *Id.* at 83.

Our holding in *Fields* that the claimant was not permitted to elect to receive multiple, concurrent specific loss awards arising out of one work incident is consistent with our decision in *Walton v. Cooper Hosiery Co.,* 48 Pa.Cmwlth. 284, 409 A.2d 518 (1980). In *Walton,* we analyzed 1974 amendments to Section 306(a) and Section 306(c) of the Act and held that the "legislative intent [of these amendments] appears clear, i.e., to bring the benefit rate payable under subsection (c) in line with the amounts payable under subsection (a)." *Walton,* 409 A.2d at 521. We concluded that contrary to the arguments of both

parties the legislature could not have intended a "disparate treatment" in setting the rate of weekly compensation under Section 306(a) or Section 306(c) and instead the amendments were intended "to expand and equalize the weekly benefits under both subsection (a) and (c)." *Id.* at 520–21. We therefore calculated the specific loss benefits for the claimant, who suffered a loss of use of his right eye, in accordance with Section 306(a).[7] *Id.* at 521; *see also Allegheny Power Service Corp. v. Workers' Compensation Appeal Board (Cockroft),* 954 A.2d 692, 700 n. 11 (Pa.Cmwlth.2008) (en banc) ("We note that the benefit rate for compensation payable under *all* subsections of Section 306(c) is computed in the same manner as for total disability under section 306(a).") (emphasis in original); *Carney v. Workmen's Compensation Appeal Board (Pittsburgh Paper Stock Co.),* 119 Pa.Cmwlth. 143, 546 A.2d 152, 154 (1988).

 Here, Claimant seeks essentially the same relief as the claimant in *Fields:* the payment of multiple specific loss benefits concurrently. However, our *Fields* and *Walton* decisions instruct that the Act does not envision such preferential treatment in the computation of specific loss benefit rates but instead requires that multiple specific loss benefit awards related to one work incident be paid consecutively with aggregated terms and the specific loss benefit rate set according to Section 306(a). Thus, pursuant to *Fields* and *Walton,* Claimant at most would be entitled to elect two specific loss benefit awards for the loss of use of his legs with the 410 week terms for each award aggregated payable at the total disability weekly compensation rate. In practical terms, this means that a specific loss

---

**7.** The claimant in *Walton* was awarded 90%, rather than 66 and 2/3%, of his average weekly wage pursuant to Section 306(a) because the claimant's average weekly wage was less than 50% of the statewide average weekly wage. 409 A.2d at 521.

award would pay Claimant 66 and 2/3% of his weekly wages, or $389.50, with the only difference that the specific loss benefits would cease after 820 weeks, plus a healing period, while total disability benefits do not have a defined end date. Unlike in *Turner*, Claimant did not identify in his petitions or present any evidence at the hearing before the WCJ that there exists any other economic rationale that would give the Board reason to depart from the Section 306(c)(23) presumption that total disability benefits are the optimum benefit for an individual, such as Claimant, who suffers bilateral losses.

Claimant also argues that he should be permitted to elect two specific loss awards instead of total disability benefits because his leg injuries were separate and apart from the acknowledged back injury for which he was receiving total disability benefits. In support of this argument, Claimant cites our decision in *Faulkner Cadillac v. Workers' Compensation Appeal Board (Tinari)*, 831 A.2d 1248 (Pa.Cmwlth.2003), in which we upheld concurrent specific loss and total disability awards that exceeded the maximum weekly compensation payable under the Act.[8] *See also Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Hopiak)*, 127 Pa.Cmwlth. 553, 562 A.2d 419 (1989). However, *Faulkner Cadillac* provides no support for Claimant's argument that he should be entitled to elect to receive specific loss benefits because the claimant in *Faulkner Cadillac* suffered two separate and unrelated work injuries, a July 1993 incident in which he sustained chemical burns on his hands re-

sulting in specific loss and a concussion in April 1994 that led to the claimant's total disability. 831 A.2d at 1250. Here, in contrast, Claimant's injuries arose out of a single work accident and therefore the multiple-injury rationale of *Faulkner Cadillac* is inapplicable.

▉ By arguing that his leg injuries were separate and apart from the acknowledged back injury, Claimant may also have been alluding to a class of cases recognized by our courts where a claimant may receive specific loss and total or partial disability benefits arising out of the same work incident where the specific loss results in a disability to a separate and distinct part of the body arising from the same workplace incident but that does not normally follow from the specific loss. *See, e.g., Lente v. Lucci*, 275 Pa. 217, 119 A. 132 (1922); *Estate of Harris v. Workers' Compensation Appeal Board (Sunoco, Inc.)*, 845 A.2d 239, 242 (Pa.Cmwlth.2004); *BCNR Mining Corp. v. Workmen's Compensation Appeal Board (Hileman)*, 142 Pa.Cmwlth. 588, 597 A.2d 1268, 1270 (1991). However, this line of cases also fails to provide support for Claimant's argument that he should be permitted to be paid concurrently on two specific loss benefit awards. While a claimant may be entitled to receive both specific loss and disability benefits in these cases, Section 306(d) of the Act explicitly prohibits these benefits from being paid concurrently but instead provides that the total or partial disability period runs first and the specific loss benefits do not begin to be paid until after the disability payments end.[9] 77 P.S.

---

8. The maximum weekly compensation payable is 66 and 2/3% of the statewide average weekly wage, which is calculated annually by the Department of Labor and Industry on the basis of employment covered by the Pennsylvania Unemployment Compensation Law. Sections 105.1 and 105.2 of the Act, 77 P.S. §§ 25.1, 25.2.

9. Section 306(d) provides:
 Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries enumerated in [Section 306(c)], the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disabil-

§ 513; *see also Community Service Group v. Workers' Compensation Appeal Board (Peiffer),* 976 A.2d 594, 596 (Pa.Cmwlth. 2009); *Estate of Harris,* 845 A.2d at 242 n. 10; *Faulkner Cadillac,* 831 A.2d at 1253 n. 7.

Accordingly, because Claimant has failed to identify any reason consistent with the statutory scheme of the Act why specific loss benefits would be more financially advantageous to him than total disability benefits, we conclude that the Board did not abuse its discretion in denying the Specific Loss Petition. The orders of the Board are affirmed.

### ORDER

AND NOW, this 28th day of January, 2015, the orders of the Workers' Compensation Appeal Board in the above matter are affirmed.

ity which results from the other separate injuries, but in that event the employe shall not receive compensation provided in [Section 306(c)] for the specific healing period.