Orlando Walton, Petitioner *v.* Cooper Hosiery Company, Respondent.

Argued October 3, 1979, before Judges ROGERS, DISALLE and CRAIG, sitting as a panel of three.

*Paul Crowley,* with him *Wilfred F. Lorry* and *Rochelle Berenholz,* for petitioner.

*R. D. Harburg,* with him *Swartz, Campbell & Detweiler,* for respondent.

OPINION BY JUDGE DISALLE, January 3, 1980:

We have before us a petition for review of a decision by the Workmen's Compensation Appeal Board awarding $56.84 per week for 275 weeks as specific loss benefits to Orlando Walton (Claimant) pursuant to Section 306(c) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §513.

It is not contested that Claimant has suffered the permanent loss of use of his left eye for all practical intents and purposes, entitling him to 275 weeks specific loss benefits plus ten weeks healing period pursuant to Section 306(c) of the Act. The sole issue is the correct rate of specific loss benefits. Claimant's average weekly wage on October 12, 1976, the date of injury, was $85.26 per week. The referee awarded specific loss benefits under Section 306(c) in the amount of $93.50 per week (one-half the maximum compensation payable for total disability). Cooper Hosiery Company (Employer) appealed from this award, arguing that Claimant is entitled to benefits at the lower rate of $56.84 per week (two-thirds of his average weekly wage). Employer relies on *Johnson v. Workmen's Compensation Appeal Board,* 15 Pa. Commonwealth Ct. 254, 327 A.2d 222 (1974), where

this Court held that Section 306(c) mandates specific loss benefits in the weekly amount of two-thirds of a claimant's wages as long as that amount falls between the statutory maximum and minimum amounts. We held that the statutory *minimum* amount payable under Section 306(c) must be determined with reference to claimant's *personal maximum* compensation payable for total disability under Section 306(a) of the Act, 77 P.S. §511.

Claimant contends that the effect of the 1974 amendments to subsections (a) and (c) of Section 306 by the Act of December 5, 1974, P.L. 782, No. 263 (Act 263) is to vitiate the *Johnson* holding in setting the statutory perimeters for specific loss benefits. We agree. In our view, the legislature intended to change the result produced by our decision in *Johnson*. As in 1974, when *Johnson* was decided, subsection (c) now sets out an award of "sixty-six and two-thirds per centum of wages during two hundred seventy-five weeks specific loss benefits for the loss of an eye." Section 306(c)(7) of the Act, 77 P.S. §513(7). After setting forth schedules for other injuries, subsection (c) continues by declaring the statutory perimeters within which this award must fall. This paragraph was amended in 1974, and now provides:[1]

Compensation under paragraphs (1) through (24) of this clause shall not be more than the maximum compensation payable nor less than fifty per centum of the maximum compensation payable per week for total disability as provided in subsection (a) of this section,

---

[1] Prior to the amendment, this section read as follows:

This compensation shall not be more than sixty-six and two-thirds per centum of the Statewide average weekly wage nor less than sixty-six and two-thirds per centum of the maximum compensation payable per week for total disability as provided in subsection (a) of this section, but in no event more than the employe's average weekly wage.

but in no event more than the Statewide average weekly wage.

Thus the statutory maximum under *Johnson* was two-thirds the Statewide average weekly wage, and the minimum was two-thirds the maximum payable for total disability as set forth in subsection (a). It is this statutory *minimum* amount in subsection (c) which the Court in *Johnson* held to be a reference to the *personal maximum benefit* under Section 306(a). This subsection was also amended in 1974 to read:[2]

For total disability, sixty-six and two-thirds per centum of the wages of the injured employe as defined in section three hundred and nine beginning after the seventh day of total disability, and payable for the duration of total disability, but the compensation shall not be more than [sixty-six and two-thirds per centum of] the [Statewide average weekly wage] *maximum compensation payable* nor less than fifty per centum of the [maximum weekly compensation payable] *Statewide average weekly wage*. If at the time of injury, the employe receives wages equal to or less than fifty per centum of the [maximum weekly compensation payable] *Statewide average weekly wage*, then he shall receive ninety per centum of his average weekly wage as compensation, but in no event less than thirty-three and one-third per centum of the maximum weekly compensation payable. Nothing in this clause shall require payment of compensation after disability shall cease.

The legislative intent to expand and to equalize the weekly benefits under both subsections (a) and (c)

---

[2] Words within brackets were eliminated by the amendment; words in italics were added thereby. The amendments to subsections (a) and (c) were enacted December 5, 1974, some two months after *Johnson* was decided.

can be seen in the following examples of changes made by the 1974 amendments. In the first place, maximum weekly benefits under both subsections were changed from "sixty-six and two-thirds per centum of the Statewide average weekly wage" to the "maximum compensation payable." Secondly, "maximum compensation payable" was redefined in Section 105.2 of Act 263, 77 P.S. §25.2, to be equal to the Statewide average weekly wage, whereas it formerly was two-thirds of that amount. "The effect of the Act 263 amendment to Section 105.2, raising the maximum compensation payable to the annually fixed Statewide average weekly wage, is to provide at least the amount of the Statewide average weekly wage where the injured person enjoys a wage rate two-thirds of which would be higher than the Statewide average weekly wage. Previously he could be limited to no more than two-thirds of the Statewide average weekly wage. Now he can get the full amount of that annual figure."[3] Thirdly, the minimum weekly benefit set out in subsection (a) was changed from "sixty-six and two-thirds" to "fifty" per cent of the "Statewide average weekly wage."[4] And finally, subsection (c) was amended, as above noted, to make it conform precisely to the changes made in subsection (a). According to Barbieri, "the maximum and minimum compensation payable for specific losses, paragraphs (1) through (24) have been fixed at a maximum equal to the Statewide average weekly wage and the minimum of no less than 50% of the Statewide average weekly wage, through the amendment to the definitions in Section 105.2."[5] We also note that the amendments specifically mandate the same weekly benefits for the heal-

---

[3] A. Barbieri, *Pennsylvania Workmen's Compensation*, §5.11(1) [hereinafter cited as Barbieri].

[4] Barbieri, §5.11(2).

[5] Barbieri, §5.21(2)(a).

ing periods allowed under paragraph (25) of subsection (c) as for total disability.

In our view, the legislative intent appears clear, *i.e.*, to bring the benefit rate payable under subsection (c) in line with the amounts payable under subsection (a). Most significantly, the amendments to (c) eliminated the proscription against an employe's receiving more in benefits than his average weekly wage. Secondly, the employer's argument that, consonant with *Johnson, supra,* subsection (c) must now be read to establish minimum compensation of "50% of the maximum compensation payable" as opposed to 66 2/3% of the maximum compensation payable (as it provided prior to the amendment) would result in a claimant's receiving less now than he did before. Given the legislature's across-the-board increase in benefits as reflected in the 1974 amendments, we cannot believe that it intended to single out this class of claimants for a reduction in benefits.

Additionally, to adopt the interpretation suggested by Employer would create a serious disparity in the weekly benefits allowed to injured claimants. For example, given the Statewide average weekly wage of $187.00 at the time of Claimant's injury, an employe earning more than $93.50 per week would receive the same weekly benefits whether he was totally disabled or had suffered a specific loss. The maximum would be $187.00 per week in both cases and the minimum would be $93.50 per week. However, once his average weekly wage fell below $93.50, he would receive substantially less for specific losses than for total disability. We cannot believe the legislature intended such disparate treatment. Indeed, were this interpretation adopted, precisely those individuals who are most in need of the economic aid envisioned by the Act would receive the least benefit from it. The second sentence of subsection (a) attests to the legisla-

ture's awareness of this greater need by providing that claimants earning less than half the Statewide average be awarded 90% of their wages, with the minimum set at one-third of the maximum compensation payable.

On the other hand, to adopt claimant's position[6] would result in subsection (c) claimants who earn less than one-half the Statewide average weekly wage receiving more in benefits than subsection (a) claimants similarly situated. We do not believe that the legislature intended this result either.

As we see it, then, since Claimant's earnings were less than one-half the Statewide average weekly wage, he should be entitled to receive as compensation 90% of his average weekly wage or $76.73 per week, and we will so order.

### Order

And Now, this 3rd day of January, 1980, the order of the Workmen's Compensation Appeal Board, dated December 7, 1978, as modified, is hereby affirmed. Accordingly, it is ordered that judgment be entered in favor of Orlando Walton and against the employer, Cooper Hosiery Company, and/or its insurer, U.S. Fire Insurance Company. The employer and/or its insurer are directed to pay the Claimant $76.73 per week for the ten week healing period from October 13, 1976 through December 21, 1976, and $76.73 per week for specific loss benefits for two hundred seventy-five weeks from December 22, 1976, through March 30, 1982.

---

[6] The claimant contends that the new subsection (c) should be read independently of subsection (a) for the purpose of calculating *minimum* benefits, so that he should receive not less than one-half the Statewide average weekly wage. He asks us to approve the referee's award, which was calculated on this basis.