546 A.2d 152

Joseph M. Carney, Petitioner *v.* Workmen's Compensation Appeal Board (Pittsburgh Paper Stock Company), Respondents.

Submitted on briefs June 14, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

144

*John D. Hendricks, Tarasi & Johnson, P.C.,* for petitioner.

*Edward K. Dixon, Zimmer, Kunz, Loughren, Hart, Lazaroff, Trenor, Banyas & Conaway,* for respondent, Pittsburgh Paper Stock Company.

OPINION BY SENIOR JUDGE BARBIERI, August 23, 1988:

Joseph M. Carney (Claimant) petitions for review of the order of the Workmen's Compensation Appeal Board (Board) that reversed a referee's decision granting Claimant's modification petition. We reverse in part and affirm in part.

Claimant was employed by Pittsburgh Paper Stock Company (Employer). On October 24, 1975, Claimant suffered a traumatic amputation of four fingers of his left hand when a paper shredding machine pulled his hand into the machine. Pursuant to a notice of compensation payable issued November 7, 1975, Claimant received benefits in the amount of $74.07 per week based on a compensation rate of ninety percent of his weekly wage of $82.30 because his wages were less than fifty per cent of the Statewide average weekly wage, pursuant to Sections 306(a) and 306(c) of The Pennsylvania Work-

men's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. 511 and 513, respectively.

Claimant then instituted a third party action against the manufacturer of the paper shredding machine in federal court. Claimant was able to settle this case for $55,000.00. However, on October 3, 1980, a federal judge struck Employer's subrogation right to the third party settlement funds on the basis that Employer refused to cooperate in permitting Claimant to disassemble the machine to find its identifying manufacturers. Employer planned to appeal this decision.

On February 6, 1981, Claimant and Employer entered into a supplemental agreement. Claimant agreed therein that his injury had resolved itself into a specific loss of the use of his left hand and that pursuant to Section 306(c) of the Act he was entitled to 335 weeks of compensation, plus 20 weeks for a healing period, computed at $74.07 per week. Employer agreed to waive its lien on compensation benefits against the third party settlement in return for the sum of $2,000.00.[1] Employer remained liable to pay compensation to the Claimant in the amount of $24,294.85, this amount being 355 weeks of compensation at $74.07 per week, less $2000.00.

On May 25, 1982, Claimant filed this instant petition for modification. Claimant first took the novel position that Employer's responsibility to pay the $24,294.85 for specific loss of the left hand arose not from the date of the injury, but from the date of the supplemental agreement, and that therefore Claimant

---

[1] The legality of this settlement of the Employer's subrogation claim is not questioned on this appeal. *See Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board (Maas),* 506 Pa. 592, 487 A.2d 794 (1985).

was entitled to the compensation he had received from 1975 to 1981, plus $24,294.85. The referee rejected this position and Claimant has not pursued it on appeal to either the Board or this Court.

Claimant further asserted that he had in fact lost the use of his left forearm in addition to that of his left hand and therefore he is entitled to compensation for 370 weeks, not 335 as previously agreed, plus the twenty week healing period. Claimant also asserted that the rate of compensation should have been calculated at $85.50 per week under Section 306(a), and not $74.07, because $85.05 is one half of the then average Statewide weekly wage of $171.00. The referee granted both these modifications, but the Board reversed under *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983), holding that Claimant could not relitigate what he had previously agreed to in the supplemental agreement.

We first deal with the issue of the rate of Claimant's weekly compensation. Claimant's petition is for loss of a forearm entitling him to sixty-six and two-thirds per centum of wages during 370 weeks under Section 306(c)(2) and an additional twenty week healing period under Section 306(c)(25). Computation of this compensation is addressed by two statements in Section 306(c) that immediately follow the provisions of Section 306(c)(25):

> Compensation under paragraphs (1) through (24) of this clause shall not be more than the maximum compensation payable nor less than fifty per centum of the maximum compensation payable per week for total disability as provided in subsection (a) of this section, but in no event more than the Statewide average weekly wage.

> Compensation for the healing period under paragraph (25) of this clause shall be computed as provided in clause (a) of this section. . . .

Section 306(a) also states that compensation shall not be more than the maximum compensation payable nor less than fifty per cent of the Statewide average weekly wage, but then goes on to state:

> If at the time of injury, the employee receives wages equal to or less than fifty per centum of the Statewide average weekly wage, then he shall receive ninety per centum of his average weekly wage as compensation, but in no event less than thirty-three and one-third per centum of the maximum weekly compensation payable.

It could be argued from this that the weekly payments for the specific loss under 306(c)(2) would be, as asserted by Claimant, and found by the referee, one half of the maximum compensation payable, or $85.50, whereas the weekly payment for the healing period would be computed under 306(a) at $74.07 per week. The confusion thus arising was resolved in *Walton v. Cooper Hosiery Co.*, 48 Pa. Commonwealth Ct. 284, 409 A.2d 518 (1980), where it was held that the second sentence of Section 306(a), quoted above, is applicable to specific losses under Section 306(c) and, therefore, claims thereunder are limited to ninety per cent of the wage, where applicable, as in this case. Consequently, this part of the Board's order is affirmed.

We now turn to the issue of whether a claimant who signed a supplemental agreement admitting he did not have any disability other than that of his left hand may now modify this agreement to assert disability of the left forearm. Claimant's medical evidence proving specific loss of the left forearm is uncontradicted. In *Beissel*, our Supreme Court held that an Employer who admits liability for an injury by issuing a notice of compensation payable may not contradict its admission of liability by filing a termination petition asserting the injury was not work related. But *Beissel* was followed by *Barna v.*

*Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp.)*, 513 Pa. 518, 522 A.2d 22 (1987), wherein the Court held that a referee acting under Section 413(a) of the Act, 77 P.S. §771 has the power to terminate compensation paid under a Notice of Compensation Payable which is materially incorrect in that the injury compensated was not work related.

As will appear, however, *Beissel* and *Barna* are not applicable to the present case and we need not reconcile *Beissel* with the Court's action in *Barna,* although the same provision in Section 413(a), the first paragraph, was the basis for the petitions in those cases as it is here. This provision reads:

> A referee of the department may, at any time, review and modify or set aside a notice of compensation payable and an original or *supplemental agreement* or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such referee, *if it be proved that such notice of compensation payable or agreement was in any material respect incorrect. . . .*

(Emphasis added.) Unlike *Barna* and *Beissel,* this case does not have to do with an employer seeking to review its initial recognition of liability on the basis that there was an error in accepting such liability because it later appeared that the disability which it agreed to compensate was not work-related. Such denigration of accepted liability was denied in *Beissel* and approved in *Barna* for the reasons stated in those cases. Here, however, we are involved with admitted liability and a supplemental agreement which re-affirms that liability, and there is no question as to the obligation of the Employer and its insurer to pay for whatever disability the Claimant may have. The extent, and not the existence, of Claimant's compensable disability is involved and, as we have

previously ruled, in *Furmanek v. Workmen's Compensation Appeal Board*, 64 Pa. Commonwealth Ct. 367, 439 A.2d 1359 (1982):

> A relevant and significant inaccuracy in a supplemental agreement allows the referee to modify or set it aside, even absent a finding of mistake of law or fact, fraud, or overreaching. *To hold otherwise would be to ignore the action of the Legislature.*

(Emphasis added.)

Furthermore, the so-called Supplemental Agreement in this case is basically a settlement agreement, having more to do with subrogation issues than with the extent of Claimant's disability, but that portion which does deal with Claimant's disability is not final, but leaves open the possibility of future litigation regarding Claimant's disability with following clause:

> . . . or, if the future period of disability is uncertain, then to continue at said rate until terminated by a further supplemental agreement, order of the Workmen's Compensation Board or Referee, or by a final receipt. . . .[2]

In any event, under the plain language of Section 413(a) as quoted above, it is Claimant's right to achieve modification of the supplemental agreement to correct what is clearly a material provision that is incorrect. Claimant has met his burden of proof in this regard and the referee has acted within his powers granting the correction. Claimant need do no more. Since the Board erred in stating that the referee did not have the power to do this, quite contrary to the precise language of the statute, as we have noted, this portion of the Board's order must be reversed.

---

[2] We note that the original notice of compensation payable describes the injury at the outset as "injury to left forearm and amputation of four fingers." (R.R. 7a).

ORDER

Now, August 23, 1988, the order of the Workmen's Compensation Appeal Board at No. A-89724, dated October 10, 1986, reversing the referee's modification of the compensation rate is affirmed, but that part of the Board's order which denied the modification petition for specific loss of a forearm is reversed.