IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jennifer Jackiw,                        :
                        Petitioner      :
                                        :
        v.                              :   No. 64 C.D. 2022
                                        :   Argued: November 16, 2022
Soft Pretzel Franchise (Workers'        :
Compensation Appeal Board),             :
                        Respondent      :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge
            HONORABLE LORI A. DUMAS, Judge
            HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                    FILED: August 10, 2023


        Jennifer Jackiw (Claimant) has petitioned this Court to review an
adjudication of the Workers' Compensation Appeal Board (Board), which affirmed
the decision of the Workers' Compensation Judge (WCJ). The WCJ determined that
Claimant's benefits were to be calculated pursuant to Section 306(a) of the Workers'
Compensation Act (the Act),[1] and concluded that the legislature did not intend to
treat a claimant receiving specific loss benefits differently from a claimant receiving
total disability benefits. In reaching her decision, the WCJ relied upon *Arnold v.
Workers' Compensation Appeal Board (Lacour Painting, Inc.)*, 110 A.3d 1063 (Pa.
Cmwlth. 2015), and *Walton v. Cooper Hosiery Co.*, 409 A.2d 518 (Pa. Cmwlth.

---

[1] Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 511.

1980). On appeal, Claimant requests that we reconsider *Walton*. After review, we affirm.

## I. BACKGROUND[2]

On June 4, 2020, Claimant suffered a crush injury to her right lower arm, which was amputated. Soft Pretzel Franchise (Employer) issued a Notice of Temporary Compensation Payable (NTCP). The NTCP provided for indemnity benefits of $199.30 per week, based upon an average weekly wage (AWW) of $221.44. The NTCP converted to a Notice of Compensation Payable (NCP).

Subsequently, Claimant filed a modification petition, alleging concurrent employment, and a penalty petition, alleging a violation of the Act and averring that her injury had resulted in a specific loss of a forearm pursuant to Section 306(c)(2), 77 P.S. § 513(2). The parties stipulated to the concurrent employment, a corrected AWW of $322.05, and a benefit rate for total disability of $289.85 per week. The parties further stipulated that Claimant's injury was a specific loss of the forearm under Section 306(c)(2) of the Act and that she was entitled to 370 weeks of compensation and a healing period of 20 weeks. However, the parties could not agree whether the specific loss benefit rate should be calculated under Section 306(a) or Section 306(c) of the Act and submitted the issue to the WCJ.[3] *See* 77 P.S. §§ 511, 513.

Following a hearing, the WCJ determined that specific loss benefits should be calculated pursuant to Section 306(a) because the legislature did not intend to treat claimants receiving specific loss benefits differently from claimants

---

[2] The recitation of facts is derived from the WCJ's decision, which is supported by the record. *See* WCJ Dec., 6/14/21, at 3-5.

[3] Based upon this stipulation, the parties agreed that the penalty petition should be dismissed.

receiving disability benefits. *See* WCJ Dec. at 4-5 (citing *Arnold*, 110 A.3d at 1074-76; *Walton*, 409 A.2d at 521). Accordingly, the WCJ denied Claimant's modification petition. Claimant timely appealed to the Board, which affirmed. Claimant timely filed a petition for review in this Court.

## II. ISSUE[4]

Claimant presents a single issue for review: whether the Board erred in affirming the WCJ's application of *Walton* and limiting her compensation rate to 90% of her AWW as provided in Section 306(a) of the Act, 77 P.S. § 511.

## III. DISCUSSION

### A. Background

The Act is "the exclusive forum for redress of injuries in any way related to the workplace." *See East v. Workers' Comp. Appeal Bd. (USX Corp./Clairton)*, 828 A.2d 1016, 1020 (Pa. 2003). The Act "is remedial in nature and its purpose is to benefit the workers of this Commonwealth. Thus, the Act is to be liberally construed to effectuate its humanitarian objectives, and borderline interpretations are to be construed in the injured party's favor." *Tooey v. AK Steel Corp.*, 81 A.3d 851, 858 (Pa. 2013).

Nevertheless, the Supreme Court has further observed that the Act balances the interests of employer and employee; it "reflects the historical *quid pro quo* between an employer and employee whereby the employer assumes liability without fault for a work-related injury, but is relieved of the possibility of a larger damage verdict in a common law action." *Tooey*, 81 A.3d at 860. On the other hand,

---

[4] In a workers' compensation appeal, our review is limited to determining whether an error of law was committed, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Bryn Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1252 n.5 (Pa. Cmwlth. 2019) (citation omitted).

the employee "benefits from the expeditious payment of compensation, but forgoes recovery of some elements of damages." *See id.*

The Act provides, in relevant part, that employers are liable for compensation for personal injury "to . . . each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence, according to the schedule contained in [Section 306] and [Section 307][5] of this article[.]" Section 301(a) of the Act, 77 P.S. § 431.

Section 306(a) provides that in cases of total disability, an employee may be compensated "sixty-six and two-thirds per centum of [her AWW] beginning after the seventh day of total disability, and payable for the duration of total disability[.]" Section 306(a) of the Act, 77 P.S. § 511. This compensation may not be more than the statewide AWW. *See id.*[6] Further, if the benefit calculated is less than fifty percent of the statewide AWW, then Section 306(a) defines a remedial calculation,[7] *i.e.*, "the benefit payable shall be . . . ninety per centum of the worker's [AWW]." *Id.*

---

[5] 77 P.S. §§ 511, 511.1, 511.2 (repealed), 512, 513, 514, 531, 531.1, 541, 542, 561, 562, 583.

[6] Section 306(a) specifically provides that "compensation shall not be more than the maximum compensation payable as defined in section 105.2." 77 P.S. § 511; *see also* Section 105.2 of the Act, added by Act of March 29, 1972, P.L. 159, 77 P.S. § 25.2. The term "maximum compensation payable" is defined as the statewide AWW. *See* Section 105.2 of the Act, added by Act of March 29, 1972 P.L. 159, 77 P.S. § 25.2. The Act further defines statewide AWW as "that amount which shall be determined annually by the [Department of Labor and Industry (Department)] for each calendar year on the basis of employment covered by the Pennsylvania Unemployment Compensation Law for the twelve-month period ending June 30 preceding the calendar year." Section 105.1 of the Act, 77 P.S. § 25.1 (footnote omitted).

The record does not contain any findings regarding the statewide AWW at the time of Claimant's injury. However, in its brief, Employer notes that "[t]he Statewide average weekly wage for injuries sustained in calendar year 2020 was $1,081.00. *See* Employer's Br. at 10. Claimant does not dispute this number.

[7] The parties have not used this term, nor does it appear in the statutory language; we adopt it for convenience.

Section 306(c) of the Act sets out the schedule of compensation for disability relating to specific loss, *i.e.*, permanent injuries of certain classes. *See* Section 306(c) of the Act, 77 P.S. § 513(1)-(25). For example, an employee who suffers the loss of a forearm shall receive "sixty-six and two-thirds per centum of [her AWW] during three hundred seventy weeks." 77 P.S. § 513(2). This section also requires that compensation shall not be more than the statewide AWW nor less than 50 percent thereof but provides no remedial calculation. 77 P.S. § 513(25). In other words, where the standard calculation for compensation for disability relating to specific loss results in an amount less than 50 percent of the statewide AWW, the Act does not require, for example, that the employee receive 90 percent of her AWW. *Compare* Section 306(a) of the Act, 77 P.S. § 511, *with* Section 306(c)(25), 77 P.S. § 513(25).

This difference between Section 306(a) and Section 306(c) was at issue before the *Walton* Court. In that case, the claimant had suffered the permanent loss of his left eye and was entitled to 275 weeks of specific loss benefits plus 10 weeks' healing period pursuant to Section 306(c) of the Act. *See Walton*, 409 A.2d at 520. However, the parties could not agree whether Section 306(a) or Section 306(c) controlled the correct rate of specific loss benefits. *See id.* Considering various amendments to the Act promulgated by the General Assembly in 1974, the *Walton* Court determined that the legislature had intended to harmonize these provisions.[8] *See id.* at 520-21 (noting, *inter alia*, that the changes made to subsection (c) "conform[ed] precisely to the changes made in subsection (a)"). Accordingly, because the standard calculation for specific loss benefits resulted in compensation less than fifty percent of the statewide AWW, the *Walton* Court applied the remedial

---

[8] In 1974, the General Assembly amended Section 306(c) of the Act. *See* Section 306(c) of the Act, Act of December 5, 1974, P.L. 782, No. 263, § 10, effective in 60 days, 77 P.S. § 513.

5

calculation defined in Section 306(a) and awarded the claimant ninety percent of his wages. *Id.* at 521.

Subsequently, this Court has upheld the application of the remedial calculation defined in Section 306(a) to the compensation rate at issue in cases of specific loss. *See*, *e.g., Allegheny Power Serv. Corp. v. Workers' Comp. Appeal Bd. (Cockroft)*, 954 A.2d 692, 700 n.11 (Pa. Cmwlth. 2008) (*en banc*), *appeal denied*, 963 A.2d 472 (Pa. 2009) ("We note that the benefit rate for compensation payable under *all* subsections of Section 306(c) is computed in the same manner as for total disability under section 306(a).") (emphasis in original); *Arnold*, 110 A.3d at 1074 (noting that the "legislative intent [of the 1974 amendments] appears clear, *i.e.*, to bring the benefit rate payable under subsection (c) in line with the amounts payable under subsection (a)" and rejecting disparate treatment under Sections 306(a) and 306(c)); *Carney v. Workmen's Comp. Appeal Bd. (Pittsburgh Paper Stock Co.)*, 546 A.2d 152, 154 (Pa. Cmwlth. 1988).

### B. Claimant's Arguments

Despite this precedent, Claimant asserts that she is entitled to a novel interpretation of Section 306(c), which would result in additional compensation for her specific loss. *See* Claimant's Br. at 4-20. Essentially, her arguments boil down to two principal claims.

First, Claimant contends that the *Walton* Court erred because it relied on the "personal" AWW of a claimant in calculating specific loss benefits and that term appears nowhere in the statutory language of the Act. *See id.* at 7, 9-16. Claimant traces the history of this Court's use of the term to *Johnson v. Workmen's Compensation Appeal Board*, 327 A.2d 222 (Pa. Cmwlth. 1974), *superseded by*

6

*statute as stated in* Walton, 409 A.2d 518, which was decided prior to the 1974 amendments. *See id.*

Second, Claimant maintains that the legislature recognized that different categories of disability required separate schedules of compensation. *See id.* at 16-20 (distinguishing, *e.g.*, claims for wage loss occasioned by total disability, the permanent amputation of a body part, and death). Therefore, discerning no ambiguity in this statutory language, Claimant contends that she is entitled to rely on the plain language of the Act and the particular schedule of benefits defined in Section 306(c). *See id.* Further, noting the absence of any defined remedial calculation, Claimant asserts that she is entitled to no less than the minimum defined in Section 306(c)(25), *i.e.*, no less than 50 percent of the statewide AWW. *See id.* at 16-20.[9]

In response, Employer asserts that the absence of a defined remedial calculation in Section 306(c)(2) was resolved properly in *Walton* and the cases that have since relied upon that precedent. *See* Employer's Br. at 12. Further, Employer explains that "[i]t was the opinion of the Court that it would be improper to allow for differing calculations which might allow a claimant who earned less than one half the statewide [AWW] to receive more in benefits than a subsection (a) claimant similarly situated." *See id.* Finally, Employer suggests that the statutory language "is not clear and free from all ambiguity," and the interpretation offered by *Walton* and its progeny is settled. *See* Employer's Br. at 14-15.

---

[9] The difference is substantial. The parties stipulated that Claimant's AWW was $322.05. The standard calculation would provide $214.80 in compensation, which is less than half of the statewide AWW, *i.e.*, $540.50. Pursuant to the plain language of Section 306(c), Claimant would therefore receive $540.50. However, applying the remedial calculation defined in Section 306(a), Claimant receives 90 percent of her AWW, *i.e.*, $289.85.

7

## C. Analysis

We decline to revisit *Walton*. Claimant's burden of persuasion is a heavy one. "The rule of stare decisis declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different." *Pries v. Workers' Comp. Appeal Bd. (Verizon Pa.)*, 903 A.2d 136, 144 (Pa. Cmwlth. 2006). Under this rule, we are "bound to follow the decisions of our Court unless overruled by the Supreme Court or where other compelling reasons can be demonstrated." *Id.*

Claimant's assertion that the *Johnson* Court's use of the word "personal" had some undefined but adverse effect on her compensation is not persuasive. In *Johnson*, the claimant suffered the total loss of his right hand and was entitled to specific loss benefits pursuant to Section 306(c) of the Act. 327 A.2d at 223. The claimant and his employer disputed the compensation owed. *See id.* At the time, Section 306(c) provided that "[t]his compensation shall not be more than sixty-six and two-thirds per centum of the Statewide [AWW] nor less than sixty-six and two-thirds per centum of the maximum compensation payable per week for total disability as provided in subsection (a) of this section, but in no event more than the employe's [AWW]. . . ." *Id.* The Court interpreted the bottom of this range as variable and dependent on the individual claimant's AWW, which has always been used to determine compensation for total disability. Thus, per the *Johnson* Court, the "maximum compensation payable for total disability" meant a claimant's "personal maximum" compensation payable for total disability. *Id.*[10]

---

[10] We need not revisit the *Johnson* case nor comment on its statutory interpretation. In *Walton*, the claimant asserted that the 1974 amendments to the Act were intended "to vitiate the *Johnson* holding," and we agreed. *Walton*, 409 A.2d at 519.

8

Subsequently in *Walton*, this Court merely explained the *Johnson* Court's use of the term. *See Walton*, 409 A.2d at 519-20. The *Walton* Court then turned to its evaluation of the 1974 amendments, specifically concluding that the legislature intended to harmonize the benefit rates payable under Section 306(a) and Section 306(c). *Id.* at 521. At no point in its analysis did the *Walton* Court adopt the *Johnson* Court's interpretation of the Act nor similarly impart a variable range of benefits based on a claimant's "personal maximum" compensation payable for total disability. *See generally id.*

Additionally, we reject Claimant's request that we award her compensation based on her interpretation of the plain language of the statute. As we have stated repeatedly, in passing the 1974 amendments, it was the intention of the legislature to harmonize the benefits payable to claimants and eliminate potential disparity among similarly situated claimants. *See id.* at 521; *see also Arnold*, 110 A.3d at 1074; *Cockroft*, 954 A.2d at 700 n.11; *Carney*, 546 A.2d at 154. It is a foundational principle of the workers' compensation system that a claimant benefits from the expeditious payment of compensation, as well as the surety of receiving that payment, in exchange for forgoing recovery of some elements of damages— namely, higher payments. *See Tooey*, 81 A.3d at 860. In that sense, the *Walton* Court's decision aligns with the purpose of the Act: treating claimants under both Section 306(a) and Section 306(c) equally, even where it may mean lower payments.

This Court has indeed addressed and used the *Walton* interpretations throughout the years, and despite her tragic injury, Claimant simply has not provided a compelling reason to set aside 40 years of precedent. *See Pries*, 903 A.2d at 144. Claimant has not met her burden of showing that the WCJ or the Board committed

9

an error of law in following it.  *See Bryn Mawr Landscaping Co.*, 219 A.3d at 1252 n.5.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Board's order, which affirmed the decision of the WCJ.

_____
LORI A. DUMAS, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jennifer Jackiw,                          :
                  Petitioner     :
                                :
           v.                          :    No. 64 C.D. 2022
                                :
Soft Pretzel Franchise (Workers'          :
Compensation Appeal Board),               :
               Respondent     :

# **O R D E R**

AND NOW, this 10th day of August, 2023, the order of the Workers' Compensation Appeal Board, entered January 19, 2022, in the above-captioned matter is AFFIRMED.

                                    _____

                                    LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jennifer Jackiw, : 
                         :
             Petitioner   :
                         :
            v.               : No. 64 C.D. 2022
                         : Argued: November 16, 2022
Soft Pretzel Franchise (Workers' : 
Compensation Appeal Board), :
                         :
           Respondent :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE WOJCIK                        FILED: August 10, 2023

Respectfully, I dissent. As the majority properly instructs, there are sound reasons supporting the longstanding requirement of adherence to precedent. Although I appreciate the majority's faithful adherence to the principle of *stare decisis*, the principle is not immutable. In matters of statutory construction, departure from *stare decisis* is warranted where the Court has "distorted the clear intention of the legislative enactment and by that erroneous interpretation permitted the policy of that legislation to be effectively frustrated." *Mayhugh v. Coon*, 331 A.2d 452, 456 (Pa. 1975); *see In re Paulmier*, 937 A.2d 364, 371 (Pa. 2007), *as clarified* (Dec. 28, 2007) ("the doctrine of *stare decisis* was never intended to be

used as a principle to perpetuate erroneous rules of law"). Such is the case here. For the reasons that follow, I believe *Walton v. Cooper Hosiery Co.*, 409 A.2d 518 (Pa. Cmwlth. 1980), was wrongly decided and its interpretation of Section 306(c) of the Workers' Compensation Act (Act),[1] was plainly erroneous.

Section 306(a)(1) of the Act establishes a schedule of compensation for total disability and provides:

> For total disability, sixty-six and two-thirds per centum of the wages of the injured employe as defined in section 309 [of the Act, 77 P.S. §582,] beginning after the seventh day of total disability, and payable for the duration of total disability, but the compensation shall not be more than the maximum compensation payable as defined in section 105.2 [of the Act, 77 P.S. §25.2, added by the Act of March 29, 1972, P.L. 159]. Nothing in this clause shall require payment of compensation after disability shall cease. If the benefit so calculated is less than fifty per centum of the Statewide average weekly wage, then the benefit payable shall be the lower of fifty per centum of the Statewide average weekly wage or ninety per centum of the worker's average weekly wage.

77 P.S. §511(1).

Section 306(c) of the Act sets forth a schedule of compensation for disability from permanent injuries of certain classes specified, namely specific and permanent loss. 77 P.S. §513(c). Section 306(c)(2) sets the rate of compensation for the loss of a forearm at "sixty-six and two-thirds per centum of wages during three hundred seventy weeks." 77 P.S. §513(3). Section 306(c)(25) provides, in relevant part:

> *In addition to the payments hereinbefore provided for permanent injuries of the classes specified*, any period of disability necessary and required as a healing period *shall*

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §511(c).

*be compensated in accordance with the provisions of this subsection.* The healing period shall end (I) when the claimant returns to employment without impairment in earnings, or (II) on the last day of the period specified in the following table, whichever is the earlier:

* * *

For the loss of a forearm, twenty weeks.

* * *

Compensation under paragraphs (1) through (24) of this clause *shall not be more than the maximum compensation payable nor less than fifty per centum of the maximum compensation payable per week for total disability as provided in subsection (a) of this section, but in no event more than the Statewide average weekly wage.*

77 P.S. §513(c)(25) (emphasis added). In other words, the upper limit is the maximum compensation payable and the minimum limit is 50% of that, provided that neither amount is more than the Statewide average weekly wage. *See id*.

The plain language of Section 306(c)(25) suggests that compensation for the scheduled specific losses is governed by a different, more generous benefit rate schedule from that provided in Section 306(a). Despite this plain language, the *Walton* Court concluded that the intent of the legislature was not to create any different benefit calculation. *Walton*, 490 A.2d at 521. The Court noted that the General Assembly substantially amended Section 306(c) of the Act in 1974 (the 1974 amendment)[2] in response to *Johnson v. Workmen's Compensation Appeal*

---

[2] Act of December 5, 1974, P.L. 782, No. 263.

*Board*, 327 A.2d 222, 223-24 (Pa. Cmwlth. 1974).[3]  *See Walton*, 409 A.2d at 520 n.2.  The Court opined, "[i]n our view, the legislative intent appears clear, *i.e.*, to bring the benefit rate payable under subsection (c) in line with the amounts payable under subsection (a) . . . ."  *Walton*, 409 A.2d at 521.  "Most significantly, the amendments to [subsection] (c) eliminated the proscription against an employe[] receiving more in benefits than his average weekly wage."  *Id*.  The Court reasoned that it would be improper to allow for differing calculations that might allow a claimant who earned less than one-half the Statewide average weekly wage to receive more in benefits than a subsection (a) claimant similarly situated.  *Id*.  The Court expressly rejected the claimant's argument that newly enacted Section 306(c) "should be read independently of subsection (a) for the purpose of calculating Minimum benefits, so that he should receive not less than one-half of the Statewide average weekly wage."  *Id*. at 521 n.6.  The Court opined that "to adopt [the] claimant's position would result in subsection (c) claimants who earn less than one-half the Statewide average weekly wage receiving more in benefits than subsection (a) claimants similarly situated."  *Id*. at 521.  The Court determined the legislature did not intend such a result.  Thus, the Court concluded that the benefit rate in the

---

[3] *Johnson* involved an award for specific loss under the prior version of Section 306(c) of the Act.  *See Johnson*, 327 A.2d at 223.  *Former* Section 306(c) mandated that for the loss of a hand, a claimant "shall be exclusively compensated in the amount of two-thirds of wages as long as that amount is not more than two-thirds of the Statewide average weekly wage (two-thirds of $141.00, or $94.00), nor is less than two-thirds of the maximum compensation payable per week for total disability as provided in subsection (a)."  *Id*. (internal quotation and citation omitted).  The Court determined that "[t]his latter minimum amount of award must be determined by [a] claimant's Personal maximum compensation payable for total disability," which was two-thirds of $47.00, or $31.33.  *Id*.  Since the statutory calculation of two-thirds of the claimant's wages (two-thirds of $64.00, or $42.67) fell within the statutory parameters, the Court awarded that amount to the claimant.  *Id*.

case of a specific loss under Section 306(c) must be computed for all purposes in the same manner as for total disability under Section 306(a). *Id*.

The problem with the *Walton* decision is that the Court did not follow the fundamental tenants of statutory construction in reaching its conclusion. "The object of all statutory interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921(a). It is well settled that "[t]he best indicator of the General Assembly's intent is the plain language of the statute." *Commonwealth by Shapiro v. Golden Gate National Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018); *Commonwealth v. Gilmour Manufacturing Co.*, 822 A.2d 676, 679 (Pa. 2003). As our Supreme Court has consistently opined:

> The intention and meaning of the Legislature must primarily be determined from the language of the statute itself . . . . When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning. This principle is to be adhered to notwithstanding the fact that the court may be convinced by extraneous circumstances that the legislature intended to enact something very different from that which it did enact.

*Commonwealth v. Shafer*, 202 A.2d 308, 312 (Pa. 1964); *accord A.S. v. Pennsylvania State Police*, 143 A.3d 896, 903 (Pa. 2016). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. §1921(b); *accord Golden Gate*, 194 A.3d at 1034; *see Commonwealth v. Pope*, 317 A.2d 887, 889 (Pa. 1974) ("A court may not alter, under the guise of 'construction,' the express language and intent

of the Legislature."). Further, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. §1921(a).

"It is only when statutory text is determined to be ambiguous that we may go beyond the text and look to other considerations to discern legislative intent." *A.S.*, 143 A.3d at 903; *accord* 1 Pa. C.S. §1921(c).

> Where statutory or regulatory language is ambiguous, this Court may resolve the ambiguity by considering, inter alia, the following: the occasion and necessity for the statute or regulation; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other statutes or regulations upon the same or similar subjects; the consequences of a particular interpretation; and administrative interpretations of such statute. *Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co.*, [] 131 A.3d 977, 984 ([Pa.] 2016), citing 1 Pa. C.S. § 1921(c).

*A.S.*, 143 A.3d at 903.

The plain language of Section 306(c)(25) evinces the General Assembly's intent to treat workers who suffered permanent loss of a body part differently than workers with a total disability. Such an interpretation gives meaning to both Section 306(a) and 306(c), whereas the *Walton* analysis eliminated the distinction between wage loss under Section 306(a) and scheduled loss under Section 306(c), thereby rendering Section 306(c)(25) essentially meaningless. There is no ambiguity in the statutory language to justify the *Walton*'s Court disregard of the plain language in pursuit of its spirit. Even if we look beyond the plain language and considered other considerations of legislative intent, it is equally plausible, if not more so, that the General Assembly intended to compensate claimants who suffer a specific loss more than claimants who suffered total disability without the

loss of a body part. Claimants under Section 306(a) and claimants under Section 306(c) are not similarly situated. Though both may be totally disabled, claimants eligible for benefits under Section 306(c) suffered a permanent specific loss, not just a disability. As the Pennsylvania Association of Justice (Amicus),[4] which filed an amicus brief in support of Petitioner Jennifer Jackiw's (Claimant) position, persuasively notes:

> One can hardly argue that an injured worker who suffers the loss of a body part has not suffered a more grievous injury than an injured worker whose injury can be expected to resolve over time allowing the injured worker to return to either his preinjury employment or some other form of employment. A specific loss is permanent. In accord therewith, it makes perfect sense that the Legislature would enact a different scheme of compensation, and a more generous scheme of compensation, for an individual who suffers a specific loss.

Amicus Brief at 11.

Following *Walton*, the General Assembly, in Act 44 of 1993, eliminated a provision that formed part of the *Walton* Court's rationale to remove the incentive of injured workers receiving more in compensation than they would by actually working. This incentive does not exist for Section 306(c) workers who receive payment for their lost body part, whether they work or not, further undermining the legitimacy of *Walton*.

The majority also relies on *Arnold v. Workers' Compensation Appeal Board (Lacour Painting, Inc.)*, 110 A.3d 1063 (Pa. Cmwlth. 2015), to support the

---

[4] Amicus, formerly the Pennsylvania Trial Lawyers Association, is a non-profit organization with a membership of 2,000 men and women of the trial bar of the Commonwealth of Pennsylvania. Amicus promotes the rights of individual citizens by advocating the unfettered right to trial by jury, full and just compensation for innocent victims, and the maintenance of a free and independent judiciary.

continued validity of *Walton* and application of Section 306(a) rates to Section 306(c) injuries. In *Arnold*, we stated:

> Our holding in *Fields* [*v. Workers' Compensation Appeal Board (City of Philadelphia)*, 104 A.3d 79 (Pa. Cmwlth. 2014),] that the claimant was not permitted to elect to receive multiple, concurrent specific loss awards arising out of one work incident is consistent with our decision in *Walton*. . . . In *Walton*, we analyzed the 1974 amendments to Section 306(a) and Section 306(c) of the Act and held that the "legislative intent [of these amendments] appears clear, *i.e.*, to bring the benefit rate payable under subsection (c) in line with the amounts payable under subsection (a)." *Walton*, 409 A.2d at 521. We concluded that contrary to the arguments of both parties the legislature could not have intended a "disparate treatment" in setting the rate of weekly compensation under Section 306(a) or Section 306(c) and instead the amendments were intended "to expand and equalize the weekly benefits under both subsection (a) and (c)." *Id.* at 520-21. We therefore calculated the specific loss benefits for the claimant, who suffered a loss of use of his right eye, in accordance with Section 306(a). *Id.* at 521; *see also Allegheny Power Service Corp. v. Workers' Compensation Appeal Board (Cockroft)*, 954 A.2d 692, 700 n.11 (Pa. Cmwlth. 2008) (*en banc*) ("We note that the benefit rate for compensation payable under all subsections of Section 306(c) is computed in the same manner as for total disability under section 306(a).") (emphasis in original); *Carney v. Workmen's Compensation Appeal Board (Pittsburgh Paper Stock Co.)*, . . . 546 A.2d 152, 154 ([Pa. Cmwlth.] 1988).

110 A.3d at 1074 (footnote omitted). We concluded that "the Act does not envision such preferential treatment in the computation of specific loss benefit rates but instead requires that multiple specific loss benefit awards related to one work incident be paid consecutively with aggregated terms and the specific loss benefit rate set according to Section 306(a)." *Id.*

MHW-8

However, neither *Arnold* nor the cases cited therein explain the aberration in *Walton* regarding application of Section 306(a) rates to Section 306(c) injuries. *Arnold* dealt with a claimant seeking payment of multiple specific loss benefits concurrently. Application of the compensation rate was not at issue.

In sum, there can be little doubt that Claimant in this case, having suffered a work-related loss of her forearm, has suffered a more grievous injury than a claimant who has not lost a body part. Based on the plain language of Section 306(c), the General Assembly clearly intended to compensate claimants with specific loss more generously than other claimants. In *Walton*, this Court distorted and frustrated the clear intention of the General Assembly by disregarding the plain language of the Act.[5]

---

[5] A scholar on workers' compensation has expressed similar dissatisfaction with the *Walton* decision:

> A provision of Section 306(c)(25) seems to suggest that compensation for the scheduled specific losses is governed by a different benefit rate schedule from that provided in Section 306(a). In a somewhat unsatisfactory case, however, the Commonwealth Court held that the intent of the legislature was not to create any different benefit calculation. The court ruled that the benefit rate in the case of a specific loss is computed for all purposes in the same manner as for total disability.

David B. Torrey and Andrew E. Greenberg, West's Pennsylvania Practice, Workers' Compensation Law and Practice §7:15 (4th ed. 2021) (footnotes omitted). In an earlier edition of this same treatise, the author wrote:

> In the trenches of everyday practice, benefits are paid for "specific loss" . . . at a compensation rate identical to that for [temporary total disability (TTD)]. This is so despite the fact that one provision of section 306(c) states:
>
> Compensation under paragraphs (1) through (24) of

**(Footnote continued on next page…)**

MHW-9

For these reasons, I believe that *Walton* was wrongly decided and that this case represents the rare exception to *stare decisis*, which permits this Court to

---

> this clause *shall not be more than the maximum compensation payable nor less than fifty per centum of the maximum compensation payable per week for total disability as provided in subsection (a) of this section, but in no event more than the Statewide average weekly wage*.

> This writer (Torrey) receives an inquiry roughly once a year that has its genesis in this provision of the [Act]. How can the everyday practice deviate so dramatically from what appears to be an unequivocal statute suggesting that an artificial floor on specific loss payments exists.

> The answer lies in the court precedent *Walton* . . . . There the court remarked, among other things, that the 1974 amendments to this section were driven by a "clear" intent "to bring the benefit rate payable under subsection (c) in line with the amounts payable under subsection (a)." The claimant in *Walton* had an average weekly wage of $85.26. The Statewide Average Weekly Wage (SAWW) for 1976 was $187.00. Claimant, relying on the statute quoted above, insisted that his benefit rate should be at the 50% floor or $93.50. The [WCJ] agreed, but the Board reversed (ordering a 2/3 payment instead). [This Court] affirmed—though it corrected the Board and held that the actual percentage should be 90% of the claimant's average weekly wage, or $76.73.

> Among other things, the court stated that the "legislative intent [of certain 1974 amendments to the statute] appears clear, i.e., to bring the benefit rate payable under subsection (c) in line with the amounts payable under subsection (a)." Claimant received, accordingly, not the floor amount that he desired, but $76.73 per week (90% of his AWW).

David B. Torrey and Andrew E. Greenberg, West's Pennsylvania Practice, Workers' Compensation Law and Practice §7:12 (3d ed. 2008) (footnotes omitted).

MHW-10

overrule it and correct its improper interpretation of Section 306(c) of the Act.

 

 

_____

MICHAEL H. WOJCIK, Judge

President Judge Cohn Jubelirer joins in this dissenting opinion.
Judge Wallace joins in this dissenting opinion.