IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| JENNIFER JACKIW, | : | No. 3 EAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered on |
| | : | August 10, 2023, at No. 64 CD |
| v. | : | 2022, affirming the Order of the |
| | : | Workers' Compensation Appeal |
| | : | Board entered on January 19, 2022, |
| SOFT PRETZEL FRANCHISE (WORKERS' | : | at No. A21-0456. |
| COMPENSATION APPEAL BOARD), | : | |
| | : | ARGUED: September 11, 2024 |
| Appellee | : | |

## OPINION

**JUSTICE MUNDY**                    **DECIDED: January 22, 2025**

We allowed review in this matter to determine the statutory formula for workers' compensation benefits based on the loss of a body part. The issue presented requires us to consider and evaluate facets of the Pennsylvania Workers' Compensation Act (the Act)[1] governing the calculation of specific-loss and total-disability benefits.

The parties agree on the underlying facts. While acting in the course and scope of her employment, Jennifer Jackiw (Claimant) sustained an injury necessitating the amputation of her right forearm. Soft Pretzel Franchise (Employer) acknowledged liability. At the time of her injury, Claimant's average weekly wage (WAWW)[2] was

---

[1] Act of June 2, 1915, P.L. 736, No. 338 (as amended, 77 P.S. §§ 1-1041.4; 2501-2625).

[2] WAWW stands for "worker's average weekly wage," the term used in Section 306(a) of the Act. *See* 77 P.S. § 511 (discussed below).

$322.05.  The parties agreed Claimant's injury was a "specific loss" of a forearm which, under Section 306(c)(2) of the Act, entitled her to a healing period of up to 20 weeks followed by 370 weeks of compensation, for a total of up to 390 weeks of benefits.  *See* 77 P.S. § 513(2).  But they differed on how to compute the weekly benefit amount for the 370 weeks.  Employer asserted it should be calculated according to the formula for total disability in Section 306(a) of the Act, 77 P.S. § 511, while Claimant maintained that the formula for a specific loss under Section 306(c)(25) should apply, *id.* § 513(25).

The compensation formulas contained in those provisions are given in terms of: the WAWW; the statewide average weekly wage (SAWW);[3] and the Maximum Weekly Compensation Payable (MWCP).[4]  Under Section 306(a), the compensation amount is two thirds of the WAWW, which is then capped at the MWCP, and finally subjected to a remedial calculation for low-wage workers earning less than half of the SAWW.  Thus, solving for X as the amount of weekly benefits, the formula is:

$X = \frac{2}{3}\text{WAWW}$
*Provided*: $X_{cap} = \text{MWCP}$
*Provided*: If $X < \frac{1}{2}\text{SAWW}$ then $X = \text{lower-of } (\frac{1}{2}\text{SAWW}, \frac{9}{10}\text{WAWW})$

*See* 77 P.S. § 511(1).[5]

---

[3] The SAWW is defined in Section 105.1 of the Act, *see* 77 P.S. § 25.1, as a number determined annually by the Pennsylvania Department of Labor and Industry (Department) based on jobs covered by Pennsylvania's Unemployment Compensation Law.

[4] The MWCP is defined by Section 105.2 of the Act.  *See* 77 P.S. § 25.2.  It is currently defined to be equal to SAWW – although it used to be defined as two-thirds of SAWW prior to July 1, 1975.  *See id.*

[5] The statute expresses this as follows:  "For total disability, sixty-six and two-thirds per centum of the wages of the injured employe . . . beginning after the seventh day of total disability, and payable for the duration of total disability, but the compensation shall not be more than the maximum compensation payable as defined in [77 P.S. § 25.2].  . . .  If the benefit so calculated is less than fifty per centum of the Statewide average weekly wage, then the benefit payable shall be the lower of fifty per centum of the Statewide average weekly wage or ninety per centum of the worker's average weekly wage."  *Id.*

The formula for specific-loss benefits, contained in Section 306(c), is expressed somewhat differently. That provision, entitled "Schedule of compensation for disability from permanent injuries of certain classes," provides different weekly compensation amounts and durations for different injuries. As relevant here, it states:

> For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:
>
> * * * * *
>
> (2) For the loss of a forearm, sixty-six and two-thirds per centum of wages during three hundred seventy weeks.
>
> * * * * *
>
> (25) In addition to the payments hereinbefore provided for permanent injuries of the classes specified, any period of disability necessary and required as a healing period shall be compensated in accordance with the provisions of this subsection. The healing period shall end (I) when the claimant returns to employment without impairment in earnings, or (II) on the last day of the period specified in the following table, whichever is the earlier: . . . For the loss of a forearm, twenty weeks. . . .
>
> *Compensation under paragraphs (1) through (24) of this clause shall not be more than the maximum compensation payable nor less than fifty per centum of the maximum compensation payable per week for total disability as provided in subsection (a) of this section, but in no event more than the Statewide average weekly wage.*
>
> Compensation for the healing period under paragraph (25) of this clause shall be computed as provided in clause (a) of this section. . . .

77 P.S. § 513(2), (25) (emphasis added).

The non-italicized portion of the text above reflects the basis for the parties' agreement that Claimant was entitled to up to 390 weeks of compensation, which includes up to 20 weeks for the healing period plus 370 weeks of benefits. The last quoted paragraph above specifies that the compensation for the healing period is to be calculated as for total disability under "clause (a) of this section," *i.e.*, Section 306(a). *Accord* Brief

for Appellant at 7. The italicized paragraph above, as applicable herein, contains the formula for computing weekly compensation during the 370 weeks of compensation mandated for the loss of a forearm. That paragraph is at the center of this case.

Like the Section 306(a) formula for total disability benefits, it is given in terms of WAWW, MWCP, and SAWW.[6] However, its reference to MWCP is followed by the phrase, "for total disability as provided in subsection (a)," which is confusing because MWCP is statutorily defined without reference to any particular worker's wages or benefits or the basis for those benefits; it is simply a number calculated annually by the Department based on wages paid across the Commonwealth. *See supra* note 3. Thus, the court in *Johnson v. WCAB*, 327 A.2d 222 (Pa. Cmwlth. 1974), interpreted the phrase to mean the claimant's "*personal* maximum payable for total disability." *Id*. at 223 (emphasis in original). Because part of our present task is to interpret that language, for now we will state the formula given by Section 306(c) for the loss of a forearm as

$$X = \tfrac{2}{3}WAWW$$
*Provided*: $X_{cap} = MWCP$ and $X_{floor} = \tfrac{1}{2}(MWCP$ for TD per 306(a))
*Provided*: $X_{cap} = SAWW$

*See* 77 P.S. § 513(25).[7]

---

[6] In this regard, we make two parenthetical observations. First, the term used here is "maximum compensation payable *per week*," which is statutorily defined to be a synonym of "maximum *weekly* compensation payable." In either event, it is presently defined to be equal to the SAWW. *See* 77 P.S. § 25.2; *supra* note 4. Second, although the first rendering of that phrase in the italicized paragraph above omits "per week," that qualifier is implied by its attachment to the same phrase appearing immediately thereafter in the same sentence.

[7] The term "(MWCP for TD per 306(a))" stands for the statutory phrase, "maximum compensation payable per week for total disability as provided in subsection (a)," 77 P.S. § 513(25) – the meaning of which we consider below. Because MWCP is, as noted, presently defined to be equal to SAWW, *see* 77 P.S. § 25.2, the last line in the above formula has no effect given that X was already capped at MWCP per the second line, but it could have some effect in the future if the Act is ever changed so that MWCP and SAWW vary from each other.

With this background, the parties submitted their competing positions to a workers' compensation judge who concluded that Claimant's benefit for the loss of her forearm should be calculated pursuant to the Section 306(a) formula. The WCJ reached this decision based on *Walton v. Cooper Hosiery Co.*, 409 A.2d 518 (Pa. Cmwlth. 1980), in which the Commonwealth Court referred to Act 1974-263 (Act 263), passed in the wake of *Johnson*, which the *Walton* court concluded was intended to equalize the benefits for specific loss and wage loss injuries by bringing them both under Section 306(a).

The WCAB affirmed the WCJ's decision. The WCAB acknowledged Claimant's arguments that: *Walton* was wrongly decided; there are distinct differences between indemnity benefits under Section 306(a) and specific-loss benefits under Section 306(c); and a leading treatise on workers' compensation law has referred to *Walton* as a "somewhat unsatisfactory case."[8] While conceding there was some merit to these assertions, the WCAB, like the WCJ, considered itself bound by *Walton*.

On appeal, Claimant asked the Commonwealth Court to reconsider *Walton* based on the statutory language. A divided *en banc* panel of that court rejected the request and affirmed the Board in a memorandum opinion. *See Jackiw v. Soft Pretzel Franchise (WCAB)*, No. 64 C.D. 2022, *slip op.* (Pa. Cmwlth. Aug. 10, 2023). The majority applied the rule of *stare decisis* and added that, as in *Walton*, it viewed Act 263 as motivated by an intent to "harmonize the benefits payable to claimants and eliminate [any] potential disparity among similarly situated claimants." *Id.* at 9. The dissenting judges, by contrast, read the statutory text as providing more generous benefits to claimants who sustain a specific bodily loss than to those who suffer total disability without the loss of a body part.

---

[8] *Jackiw v. Soft Pretzel Franchise*, Appeal Case A21-0456, *slip op.* at 3 & n.3 (Workers' Compensation Appeal Board Jan. 19, 2022) (quoting David B. Torrey & Andrew E. Greenburg, 7 WEST'S PA. PRACTICE, WORKERS' COMPENSATION LAW & PRACTICE § 7:15 (4th ed., Nov. 2021 update)).

They reasoned the permanent loss of a body part is a more severe injury than a disability that can be expected to resolve over time, and therefore, it was rational for the Legislature to provide enhanced benefits.

We allowed further review to answer the following question:

Did the Commonwealth Court err in applying Section 306(a) of the Workers' Compensation Act, 77 P.S. § 511, rather than Section 306(c), 77 P.S. § 513, to determine the benefit rate for the specific loss of a body part, based upon its decision in *Walton v. Cooper Hosiery Co.*, 409 A.2d 518 (Pa. Cmwlth. 1980)?

*See Jackiw v. Soft Pretzel Franchise (WCAB)*, 313 A.3d 450 (Pa. 2024) (*per curiam*).

This dispute requires an exercise in statutory interpretation, the object of which is to ascertain and effectuate the General Assembly's intent. *See* 1 Pa.C.S. § 1921(a). Because the plain text of the statute is generally the best indication of that intent, *see A.L. v. Pa. State Police*, 274 A.3d 1228, 1236 (Pa. 2022), we may not disregard the letter of the law to pursue its spirit where the words are clear. *See* 1 Pa.C.S. § 1921(b). Only if the text is "not explicit" do we ascertain legislative intent by resorting to the tools of statutory construction. *Id.* § 1921(c); *see Oliver v. City of Pittsburgh*, 11 A.3d 960, 965 (Pa. 2011) (citing *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1201 (2001)). In the instant dispute, although one particular phrase is, at first blush, somewhat confusing, for the reasons that follow we ultimately do not consider it to be sufficiently inexplicit to require invocation of the tools of construction. To the contrary, a close reading of the words in their overall context makes the legislative intent clear.

As summarized above, Section 306 of the Act contains different calculations for benefits based on total disability versus a specific-loss injury including an injury requiring an amputation, as in this case. Total-disability benefits are calculated under Section 306(a), while specific-loss benefits are determined under Section 306(c). The difficulty that arises is that the formula given in 306(c) cross-references 306(a), with its statement

that the benefit may not be less than one half of "the maximum compensation payable per week for total disability as provided in subsection (a) of this section." 77 P.S. § 513(25). That is the aspect of the statutory text which raises a potential difficulty because, as previously noted, "maximum compensation payable per week" is a term specifically defined by the Act without reference to benefit type. *See* 77 P.S. §§ 25.2.

Nevertheless, it is settled that "[s]ome meaning must be ascribed to every word in a statute," *Commonwealth v. McClelland*, 233 A.3d 717, 734 (Pa. 2020), and hence, interpreting language as mere surplusage is disfavored. *See id.*; 1 Pa.C.S. § 1922(2) (directing a presumption that the legislative body "intends the entire statute to be effective and certain"). Consequently, we should avoid reading the qualifying phrase – "as provided in subsection (a) of this section" – as having no effect at all. With that in mind, it appears the full statutory term, *the maximum compensation payable per week for total disability as provided in subsection (a) of this section*, must refer, not to the statutorily-defined concept of "maximum compensation payable per week," but to the maximum weekly benefit within the formula established under Section 306(a). In other words, the 306(a) formula's benefit cap gets plugged into the Section 306(c) formula: half of that cap becomes the floor in the 306(c) calculation.

We realize that under Section 306(a), as it presently exists, *see supra* note 5, that cap is, in fact, the maximum weekly compensation payable. *See* 77 P.S. § 511. This means that the cross-reference to 306(a) ultimately resolves to MWCP, which is the same result as if the Section 306(c) formula had simply set the benefit floor at one-half "the maximum compensation payable per week" without adding "as provided in subsection (a) of this section." But that does not reduce the latter phrase to surplusage. The General Assembly has repeatedly tinkered with both formulas over the years, and the current version of Section 306(c) reflects that body's wish to leave itself room to modify 306(a)

while maintaining the circumstance that the 306(c) benefit floor is one half of whatever the 306(a) cap happens to be at the time.

This conclusion is different from the one reached by the Commonwealth Court in *Johnson*, which held that the cross-reference to Section 306(a) should be understood to refer to the claimant's "*personal* maximum" under 306(a). *Johnson*, 327 A.2d at 322 (emphasis in original). We disagree with that holding. The word "personal" does not appear anywhere in the relevant provisions of the Act. The *Johnson* court's insertion of the "personal" qualifier was therefore not supported by the statutory text at that time, nor is it now.[9] Further, inserting the qualifier does not even make sense because there is no such thing as a "personal maximum" under 306(a). There is a *formulaic* maximum, which sets a cap on the possible benefits any claimant may receive. But that number is the same whether for this claimant or any other claimant. The way the 306(a) formula works – and has worked at least since *Johnson* – is that a benefit amount is computed as a function of the claimant's average weekly wage, which is then potentially adjusted pursuant to limitations extrinsic to any information about the particular claimant.[10] There is therefore a "personal *benefit*" (a single number) computed via the formula, but there is no "personal *maximum*" – a term that implies a single claimant is entitled to a range of benefits, which is not true.

---

[9] *Johnson* did not cite any authority or provide any reasoning to support its inclusion of the word "personal." Further, although some of the advocacy in this matter has focused on divining the legislative intent behind Act 263, which was enacted in the wake of *Johnson*, the statutory language that *Johnson* interpreted to refer to a "personal maximum" under 306(a) was not altered by Act 263, nor has it been altered to this day.

[10] This has the effect of bringing outlier wage amounts into a specific range. In *Johnson*'s time that extrinsic maximum (*i.e.*, the benefit cap) was two-thirds of the statewide average weekly wage (⅔SAWW). Act 263 changed it to 100% of the maximum weekly compensation payable (MWCP), which is what it is today.

The Commonwealth Court also erred six years later in *Walton*. In that matter the court held the revisions effectuated by Act 263 vitiated *Johnson*'s understanding of how to compute the statutory minimum and maximum for specific-loss benefits, *see Walton*, 409 A.2d at 519, even though Act 263 made no change at all to the portion of the statute on which *Johnson* rested.[11] The court then made several statements about the changes effectuated by Act 263: it observed that in both 306(a) and 306(c) the Legislature had decided to be more generous to high wage-earners by increasing the maximum from two-thirds to 100% of the statewide average weekly wage, and the minimum benefit under 306(a) had also been augmented. *See id.* at 520. While true, neither observation had any relation to the method for calculating the minimum benefit under 306(c). The court then, crucially, stated that Section 306(c) was amended by Act 263 "to make it conform precisely to the changes made in subsection (a)," *id.*, a conclusion that appears to have been based on the fact, just noted, that the benefit *caps* in each section were increased to 100% of the statewide average. But the formulas in 306(a) and 306(c) involved much more than just a benefit cap, and so any suggestion the latter was changed to "precisely conform" to the former was exaggerated and glossed over the fact the statutory minimum benefit under 306(c) had actually been *reduced*. The court then compounded these errors in multiple respects, all founded on its failure to closely read the legislative text or to apply its plain meaning.[12]

---

[11] Namely: "the maximum compensation payable per week for total disability as provided in subsection (a) of this section." 77 P.S. § 306(c).

[12] For example, the court pointed to the circumstance that the healing-period calculation was brought into line with the 306(a) calculation as proof that the non-healing-period calculation should also be the same, *see id.* at 521, even though that position found no support in Act 263. As well, the court acknowledged that the benefit floor in 306(c) had been lowered by Act 263 from two-thirds to one-half the maximum weekly compensation payable, but it refused to obey that unambiguous language, indicating "we cannot believe" the Legislature really intended to do that. *Id.*

The difficulties that ensue from *Walton*'s approach to statutory interpretation and application are manifold. As demonstrated by the present case, *Walton* and its progeny have sown confusion in this area of workers' compensation law by setting into motion two different compensation schemes for specific-loss injuries, one statutory and one judicial. But they are most pronounced in that they ignore the wording chosen by a co-equal branch of government whose distinct responsibility and authority is and has always been to make public policy choices that the judicial branch is duty-bound to enforce, subject of course to any relevant constitutional limitations, of which none have been alleged in this case. *See Program Admin. Servs., Inc. v. Dauphin Cnty. Gen. Auth.*, 928 A.2d 1013, 1017-18 (Pa. 2007).

Employer takes issue with our conclusion, proffering it would lead to an "unfair" result, Brief for Appellee at 11, insofar as it would mean Claimant is entitled $540.50 per week in benefits, whereas her weekly wage during her active employment was lower than that ($322.05).[13] During this litigation, Claimant has offered reasons why she believes it is rational to award higher benefits for specific-loss injuries than for injuries resulting in total disability without the loss of a body part, including the oft-repeated assertion that specific-loss injuries are more "grievous" in that they are permanent. *See* Brief for Appellant at 9. Employer counters that some non-specific-loss workplace injuries such as cancer and lung diseases are worse. *See* Brief for Appellee at 16. This type of argumentation is for the legislative sphere; it has no relevance to the interpretation of non-ambiguous statutory language, which is our present task.

Employer also maintains there is "no basis" for Claimant's contention that individuals with specific-loss injuries are a "special class, deserving of a different method

---

[13] The parties agree that the statewide weekly average wage for the relevant year was $1,081, leading to a minimum benefit under 306(c) of half of that, or $540.50. See Brief for Appellant at 12-13; Brief for Appellee at 9.

of calculation" for weekly benefits. *Id.* at 18. The "basis" is that the General Assembly said so. That body included within the Act one formula for total-disability benefits and a separate formula for specific-loss benefits. Employer's apparent suggestion we should ignore part of the Act is not well taken.

Finally, Employer notes the Act, under Section 306(c)(23), directs that a bilateral loss (the loss of both hands, arms, feet, legs, or eyes) constitutes a total disability to be compensated according to Section 306(a). *See* 77 P.S. § 513(23). Employer reasons this demonstrates the General Assembly intended that *all* specific-loss injuries, including the loss of a forearm as in the present controversy, should be compensated according to 306(a). *See* Brief for Appellee at 16-17. We believe it demonstrates the opposite: it shows the Legislature knew how to shift all computations over to Section 306(a) when it wanted to, but it chose to do so only with regard to the injuries listed under 306(c)(23).[14]

For the reasons given above, the order of the Commonwealth Court is vacated and the matter is remanded for further proceedings consistent with this opinion.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht, and McCaffery join the opinion.

Justice Brobson concurs in the result.

---

[14] With that said, we issue no holding concerning how 306(23) interacts with the general formula in 306(25), as 306(23) is not presently before this Court.